UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| CORINE ELAT, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 11-2931 RWT |
| | § | |
| FRANÇOIS NGOUBENE, | § | |
| MARIE-THÉRÈSE NGOUBENE, | § | |
| CAROLINE RAÏSSA EMANDOP | § | |
| NGOUBENE, | § | |
| ROXANE MARIE-FRANÇOISE | § | |
| NGOUBENE, | § | |
| COLLINS RENE NGOUSSOMO, | § | |
| DANY ESTELLE NGOUBENE, | § | |
| | § | |
| | § | |
|     Defendants. | § | |

## FIRST AMENDED COMPLAINT AND ACTION OF REPLEVIN

Plaintiff Corine Elat files this Complaint and Action of Replevin against Defendants

François Ngoubene, Marie-Thérèse Ngoubene, Caroline Raïssa Emandop Ngoubene, Roxane

Marie-Françoise Ngoubene, Collins Rene Ngoussomo, and Dany Estelle Ngoubene, and alleges

as follows:

### I.  INTRODUCTION

1.       Human trafficking is a modern-day form of slavery, involving victims who are

forced, defrauded, or coerced into sexual or labor exploitation.  Trafficking in human beings is

reaching epidemic proportions throughout the world, including in the United States.  Former

President George W. Bush called human trafficking a special kind of evil in the abuse and

exploitation of the most innocent and vulnerable.  And Congress, recognizing the countless

human tragedies such practices inflict, passed the Trafficking Victims Protection Reauthorization

Act of 2003 ("TVPRA"), establishing a private cause of action for victims of human trafficking in order to make those victims whole and deter the perpetrators from committing such acts. This action is brought under the TVPRA and other state and federal laws to seek just compensation for Plaintiff—a victim of human trafficking—and bring the perpetrators to account.

## II. JURISDICTION AND VENUE

2.      This Court has original jurisdiction based on the TVPRA, 18 U.S.C. § 1595, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

3.      This Court has supplemental jurisdiction over the related state law claims under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction over these claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants reside in the District of Maryland, Southern Division, and because all or substantially all of the events giving rise to the claims in the Complaint occurred in the District of Maryland.

## III. PARTIES

5.      Plaintiff is a citizen of Cameroon who resided in Defendants' College Park, Maryland home for approximately two years. From the time of her May 2008 escape from Defendants' home through the present, she has resided at an undisclosed location in the District of Columbia metropolitan area. Plaintiff remains in the United States on a T-visa, a type of visa granted to victims of human trafficking.

6.      Defendant François Ngoubene is a citizen of Cameroon who resides at 9001 Gettysburg Lane, College Park, Maryland 20740, where he has lived since at least January 2006.

He employed Plaintiff as a domestic worker at his home in College Park from on or about April 19, 2006, until Plaintiff's escape on or about May 2, 2008.   At all relevant times, Defendant François Ngoubene was an employer pursuant to the FLSA, the Maryland Wage and Hour Law (Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* (West 2011)) and the Maryland Wage Payment and Collection Law (Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* (West 2011)).   During the relevant time period, Defendant François Ngoubene was employed as Second Consular at the Embassy of Cameroon in Washington, D.C.

7.      Defendant Marie-Thérèse Ngoubene is a citizen of Cameroon who resided at 9001 Gettysburg Lane, College Park, Maryland 20740, from at least January 2006 through May 2008.  She is the wife of Defendant François Ngoubene.

8.      Defendant Caroline Raïssa Emandop Ngoubene is a citizen of Cameroon who resided at 9001 Gettysburg Lane, College Park, Maryland 20740, from at least January 2006 through May 2008.   Upon information and belief, Defendant Caroline Ngoubene is the adult daughter of Defendants François Ngoubene and Marie-Thérèse Ngoubene.

9.      Defendant Roxane Marie-Françoise Ngoubene ("Roxane Ngoubene") is a citizen of Cameroon who resided at 9001 Gettysburg Lane, College Park, Maryland 20740, from at least January 2006 through May 2008.   Upon information and belief, Defendant Roxane Ngoubene is the adult daughter of Defendants François Ngoubene and Marie-Thérèse Ngoubene.

10.     Defendant Collins Rene Ngoussomo is a citizen of Cameroon who resided at 9001 Gettysburg Lane, College Park, Maryland 20740, from at least January 2006 through May 2008. Upon information and belief, Defendant Collins Rene Ngoussomo is the adult son of Defendants François Ngoubene and Marie-Thérèse Ngoubene.

11.     Defendant Dany Estelle Ngoubene is a citizen of Cameroon who resided at 9001 Gettysburg Lane, College Park, Maryland 20740, from at least January 2006 through May 2008. Upon information and belief, Defendant Dany Estelle Ngoubene is the adult daughter of Defendants François Ngoubene and Marie-Thérèse Ngoubene.

## IV.  FACTS

**Plaintiff is Induced to Come to the United States**

12.     In late 2005, Plaintiff was living in Cameroon and attending high school. Plaintiff's mother informed her that Defendant François Ngoubene, Plaintiff's uncle by marriage, wanted to bring Plaintiff to live with him and his family in the United States while she attended nursing school and worked at a job to pay for her education.  Plaintiff was very excited by this offer and the opportunity to seek a better life for her and her family.

13.     Soon thereafter, Defendant Marie-Thérèse Ngoubene informed Plaintiff, through Plaintiff's mother, that she had found a job for Plaintiff in the District of Columbia metropolitan area.  A flurry of activity ensued, and Plaintiff was pressured to act quickly to avoid missing this employment opportunity.

14.     On or about January 16, 2006, Plaintiff met with Defendant François Ngoubene in Cameroon.  During this meeting, Defendant François Ngoubene made Plaintiff hastily sign a number of documents written in English.  Defendant François Ngoubene represented that the documents were for obtaining Plaintiff's travel documents to the United States, but he did not give her time to read them and, in fact, physically covered up portions of them to prevent Plaintiff from reading what she was signing.  Plaintiff's limited comprehension of English at the time further impaired her understanding of what she was signing.

15.     During this meeting, Defendant François Ngoubene said nothing about Plaintiff's coming to the United States to work for his family as a domestic worker.  Instead, Plaintiff continued to believe that she would be living with Defendants while she attended nursing school and worked at a job elsewhere in the District of Columbia metropolitan area.

16.     Unbeknownst to Plaintiff, one of the documents she signed was an employment contract ("the Contract") (attached as Exhibit A).  This Contract was typed on the letterhead of the Embassy of the Republic of Cameroon and indicated that Plaintiff was being hired by Defendant François Ngoubene as a domestic worker for a renewable period of one year.  The Contract further provided that Plaintiff was to be paid $9.38 an hour per 40 hours a week of work and that there would be no deduction from this amount for food and lodging.

17.     Defendant François Ngoubene induced Plaintiff to sign this Contract so that he could improperly obtain a G-5 visa for Plaintiff to come to the United States.

18.     Upon information and belief, the Contract was drafted by Defendant Caroline Ngoubene, who is an attorney licensed to practice law and who lives with Defendant François Ngoubene.

19.     Plaintiff departed for the United States in April 2006, temporarily leaving behind her future husband and their three-year old daughter, with the hope of an education and better life before them.

**Plaintiff Enters a Life of Servitude in the United States**

20.     Plaintiff arrived in the United States on or about April 19, 2006.  Defendant Marie-Thérèse Ngoubene picked Plaintiff up from the airport on that date and brought her to

François and Marie-Thérèse Ngoubenes' house in College Park, Maryland ("the Ngoubenes' home").

21.     Immediately upon arriving at the Ngoubenes' home, Plaintiff was confronted with a life that contrasted starkly with what she had been promised.

### *Defendants prevent Plaintiff from attending school and force her to perform around-the-clock labor.*

22.     François and Marie-Thérèse Ngoubene forced Plaintiff to perform constant domestic tasks for all of the Defendants.  They broke their promise to allow Plaintiff to enroll in and attend nursing school, and never again mentioned the job that Defendant Marie-Thérèse Ngoubene said she had found for Plaintiff—and which had been the pretext for forcing her to rush through the emigration process.

23.     On most days, Plaintiff was forced to wake up before 6 a.m. to cook breakfast and make coffee for the Defendants and their guests.  She would then clean up the breakfast and wash the dishes by hand as Defendants François and Marie-Thérèse Ngoubene refused to allow her to use the dishwasher in the kitchen.

24.     The rest of Plaintiff's day was consumed with cleaning the house's seven bedrooms, two kitchens, and four bathrooms, and cooking and then cleaning-up after lunch and dinner.  She was also required to do the laundry, wash the cars, and go shopping for groceries for the family and their guests.  As a result, Plaintiff had little or no time to herself until she was permitted to go to bed, exhausted, usually around 11 p.m., after working for more than seventeen hours with very few breaks.

25.     During the more than two years that Plaintiff served the Defendants, none of the Defendants ever paid her for any of this work.

***Plaintiff is forced to live in inhumane conditions.***

26.     During her time of servitude to the Defendants, Plaintiff was given very little food and often went hungry.  Plaintiff was only allowed to eat whatever leftovers remained from the meals she cooked for the Defendants and their guests.  She was never allowed to take any food without first obtaining the Defendants' permission.

27.     Defendants François and Marie-Thérèse Ngoubene refused to obtain any medical treatment for Plaintiff when she became ill, insisting that even providing her with over-the-counter medications would cost too much.  Instead, when Plaintiff became ill, they instructed her to drink more water until she felt better.

***The Defendants isolate Plaintiff from the outside world.***

28.     Upon information and belief, in order to control Plaintiff and maintain the conditions of her involuntary servitude, the Defendants agreed to work together to isolate her from the outside world and otherwise prevent her from leaving the Ngoubenes' home.

29.     Plaintiff was only allowed to leave the Ngoubenes' home when accompanied by one of the Defendants.  When outside the Ngoubenes' home she was forbidden from speaking to anyone, a rule enforced by whichever Defendant accompanied her, including, François Ngoubene, Marie-Thérèse Ngoubene, Caroline Raïssa Emandop Ngoubene, Roxane Marie-Françoise Ngoubene, and Dany Estelle Ngoubene.

30.     Even when Plaintiff was permitted to leave the Ngoubenes' home, her excursions were limited to attending English language classes with Defendant Marie-Thérèse Ngoubene, attending classes toward a General Educational Development ("G.E.D.") certificate, buying groceries with Defendant Marie Thérèse Ngoubene or one of the other Defendants, and attending

church with some or all of the Defendants.  Otherwise, Plaintiff's time was almost completely occupied by serving the Defendants and their guests.

31.     When Plaintiff was allowed to leave the Ngoubenes' home to attend class, the Defendants expected Plaintiff to fulfill the same daily tasks, thus forcing her to work late into the night, sometimes as late as 1:00 a.m.

**_Feeling she has no other option, Plaintiff continues serving the Defendants._**

32.     Plaintiff remained with the Defendants, hoping that they would eventually allow her to attend nursing school.  Defendant Marie-Thérèse Ngoubene played upon these hopes, repeatedly bringing up the possibility of Plaintiff attending nursing school at some later point and warning Plaintiff that François and Marie-Thérèse Ngoubene would send Plaintiff back to Cameroon without this greatly desired education if Plaintiff did not do what they demanded of her.  Upon information and belief, the Defendants all agreed to play along with these and similar deceptions.

33.     Plaintiff also feared the consequences she faced if she tried to leave.  Plaintiff knew very few people in the United States and did not know where she would go if she left the Ngoubenes' home.  Further, because none of the Defendants ever paid her for her work, Plaintiff had little money to afford transportation or lodging if she tried to leave.

34.     Upon information and belief, the Defendants conspired to impose a sense of hopelessness and isolation on Plaintiff by making her believe that she could not leave them because she was "illegal" and did not have the appropriate papers to go anywhere else.  Specifically, Defendant Marie-Thérèse Ngoubene informed Plaintiff that on her own she would face a constant threat of arrest by the police.  Caroline Ngoubene, a licensed attorney who

purports to practice immigration law, informed Plaintiff that she was "illegal" and could not leave the Defendants, thus reinforcing the statements made by Defendant Marie-Thérèse that Plaintiff would be arrested if she tried to leave.

35.     Upon information and belief, one time, after Plaintiff expressed a desire to leave the Ngoubenes' home for good, Defendant Roxane Ngoubene went through Plaintiff's possessions in an unsuccessful attempt to seize Plaintiff's passport.   Upon information and belief, Roxane Ngoubene took this action in order to prevent Plaintiff from escaping the condition of involuntary servitude that the Defendants had imposed upon her.

36.     Defendants François Ngoubene, Marie-Thérèse Ngoubene, Caroline Raïssa Emandop Ngoubene, Roxane Marie-Françoise Ngoubene, and Dany Estelle Ngoubene furthered Plaintiff's hopelessness by verbally abusing, threatening, and demeaning her.   Plaintiff lived in constant fear of the Defendants, especially Defendant Marie-Thérèse Ngoubene.   Plaintiff was made to fear retribution to herself or her family if she disobeyed any of the Defendants or attempted to leave the Ngoubenes' home.   Plaintiff was made to believe that the Defendants, especially François Ngoubene, were well-connected to the Cameroonian Embassy in the United States and to the government in Cameroon and that the Defendants were willing to use this power to harm Plaintiff or her family or force Plaintiff back into a life of servitude if she escaped.

**Plaintiff Is Taken Back to Cameroon to Change Her Visa**

37.     In or about July 2007, Plaintiff returned to Cameroon with Defendants François and Marie-Thérèse Ngoubene.   The purpose of this trip was to change Plaintiff's visa from a G-5 visa to an A-3 visa, because Plaintiff did not qualify for a G-5 visa.   While in Cameroon with the

Ngoubenes, Plaintiff was almost constantly confined to François and Marie-Thérèse Ngoubenes' home, except when François Ngoubene took her to the American embassy to change her visa. Plaintiff was also forced to perform the same daily tasks she performed for the Defendants in America.

38.     While in Cameroon, Plaintiff did not want to return to the United States with Defendants François and Marie-Thérèse Ngoubene, but she was now dependent on them and under their psychological and physical control.   To reinforce this control and further induce Plaintiff's cooperation, Defendant Marie-Thérèse Ngoubene told Plaintiff that she could bring her now four-year old daughter back to the United States to live with the Defendants.   Plaintiff was deceived into believing that having her daughter in the Ngoubenes' home would result in better treatment for herself and expanded educational opportunities for her daughter.   Plaintiff therefore cooperated in returning to the United States and brought her daughter with her.

39.     While in Cameroon, Plaintiff and her now-husband were secretly married.

**Abuse Worsens Upon Plaintiff's Return to United States**

40.     After Plaintiff returned to the United States on or about September 19, 2007, she quickly realized that the presence of her daughter was not going to result in better treatment from the Defendants.

41.     Defendant Marie-Thérèse Ngoubene immediately informed Plaintiff that she expected her to work as if her daughter was not there.   Plaintiff was required to perform all the same tasks that she had done before, leaving little time to spend caring for her daughter as she had expected to do.

42.     Plaintiff and her daughter were forced to move into an extension behind the garage of the Ngoubenes' home.  This room did not have a bathroom, running water, heating, air conditioning, or any furnishings besides a bed, which Plaintiff and her daughter had to share.

43.     Without heating, the extension became unbearably cold during the winter.  This was only made worse by a break in the siding covering the extension through which frigid air seeped, causing Plaintiff's daughter to become so cold that Plaintiff had to use every article of clothing she owned to cover her while she slept.

44.     This extension was connected to the main house by a door that was normally locked.  Plaintiff and her daughter had to knock and wait for someone to let them into the house so they could use the bathroom or any other facility in the house.  During the night, Plaintiff and her daughter had almost no access to the bathroom.

45.     The Defendants did not increase the amount of food they provided Plaintiff after her daughter began living in their home, continuing to only allow them to eat the leftovers of the food Plaintiff cooked for the Defendants and their guests.  Defendant Marie-Thérèse Ngoubene accused Plaintiff and her daughter of being "thieves" whenever they sought to eat anything more than leftover scraps.

46.     Defendant Marie-Thérèse Ngoubene's mother also came to the United States to live with the Defendants at or around this time.  Plaintiff was required to provide all of the home-nursing care for Defendant Marie-Thérèse Ngoubene's mother in addition to her other tasks.

**Plaintiff Discovers Her Employment Contract**

47.     In order to enroll her daughter in school, Plaintiff was required to provide the school with her rental agreement and proof of income.

48.     When Plaintiff asked Defendant Marie-Thérèse Ngoubene for this information, Defendant Marie-Thérèse Ngoubene provided information about her and her husband's income. After the school repeatedly rejected this information as insufficient evidence of Plaintiff's income, Defendant Marie-Thérèse Ngoubene provided Plaintiff with a series of documents, but warned her that she had to bring the documents back immediately.

49.     Included in these documents was the Contract that Plaintiff had unknowingly signed before she originally left Cameroon.  Having improved her English since her arrival in the United States, Plaintiff could now read the Contract and realize that she had agreed to come to the United States as a domestic worker and that Defendant François Ngoubene had agreed to pay her for her services.  Plaintiff clandestinely scanned and emailed these documents to her husband in Cameroon.

50.     At around the same time, Plaintiff's husband spoke to an individual at the American embassy in Cameroon and learned that the visa François Ngoubene had obtained for Plaintiff to come to the United States was not for students, as Plaintiff had thought, but for domestic workers of diplomats and their households.  When Plaintiff's husband received the Contract from Plaintiff, it confirmed that Defendants never had any intention of allowing Plaintiff to go to school, and that the promise of schooling was a ruse to get Plaintiff to continue working for them without pay.

**Plaintiff's Escape from the Ngoubenes**

51.     On or about April 30, 2008, Plaintiff's husband, after learning of the Contract and of the true state of Plaintiff's living arrangements from Plaintiff's daughter, traveled to the United States from Cameroon to rescue his family.

52.     On or about May 2, 2008, after Plaintiff's husband arrived in the United States, Plaintiff informed Defendant François Ngoubene that she was leaving and would no longer be working for him and his family.   Defendant François Ngoubene became angry and demanded Plaintiff's passport and all of her documents.   When Plaintiff informed him that she did not have these documents, some or all of the Defendants searched Plaintiff's possessions.   Fortunately, Plaintiff had secretly given these documents to her husband after his arrival in the United States, and they could no longer be used to threaten her.

53.     In order to obtain permission to leave the house, Plaintiff told Defendants François and Marie-Thérèse Ngoubene that she would retrieve her passport and return it.   Once out of their presence, however, she and her daughter escaped with the help of her husband.

**The Harm Inflicted on Plaintiff Continues and Delays the Filing of Her Complaint**

54.     Plaintiff and her daughter escaped from the Ngoubenes' home with only the clothes on their backs.   On or about May 28, 2008, Plaintiff's husband contacted Defendants François and Marie-Thérèse Ngoubene and requested that he and Plaintiff be allowed to retrieve their family belongings from the Ngoubenes' home.   These belongings included items of great sentimental value and most of Plaintiff's and her daughter's clothes.

55.     When Defendants François and Marie-Thérèse Ngoubene refused, Plaintiff's husband asked the police to accompany him to the Ngoubenes' home to retrieve the items.   The police did so, but were prevented from entering the Ngoubenes' home after Defendants François and Marie-Thérèse Ngoubene claimed diplomatic immunity.   Defendant Marie-Thérèse Ngoubene told the police that she would only return Plaintiff's belongings if Plaintiff "returned" her passport to them.

56.     To this day, Defendants François and Marie-Thérèse Ngoubene have continued their refusal to return many of Plaintiff's possessions.

57.     Plaintiff and her family live in continual fear of the Defendants, and particularly Defendants François and Marie-Thérèse Ngoubene, as the latter have repeatedly threatened to harm Plaintiff and her family in the United States and Cameroon.

58.     For example, less than three years after her escape from the Ngoubene home, Ms. Elat, through counsel, sought compensation for the involuntary domestic services she had provided to the Ngoubenes and informed them of her intent to file a civil action to seek such compensation if they refused.

59.     Defendant Marie-Thérèse Ngoubene, on behalf of herself and the other defendants, responded by making daily telephone calls to Plaintiff's mother in Cameroon threatening to harm Plaintiff and/or her family if Plaintiff proceeded with her intent to sue the Ngoubenes.

60.     Defendant Marie-Thérèse Ngoubene's threats were made with the intent to prevent Plaintiff from filing the instant civil action.

61.     These threats were conveyed to Plaintiff and directly caused and induced her to delay initiating this civil action until the filing of her original complaint on October 13, 2011.

62.     After the filing of the original complaint in this action, Marie-Thérèse Ngoubene, on behalf of herself and the other defendants and consistent with her prior actions, responded by making further threats to harm Plaintiff and/or her family.

63.     Plaintiff has suffered from depression, insomnia, physical anguish, and emotional anxiety as a result of Defendants' treatment.  By this Complaint, she seeks justice.

## V.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
Trafficking Victims Protection Reauthorization Act ("TVPRA"); Enticement into Slavery
(18 U.S.C. §§ 1583, 1595)
(Against François Ngoubene and Marie-Thérèse Ngoubene)

64.     Plaintiff incorporates each of the foregoing paragraphs by reference.

65.     The TVPRA imposes criminal penalties and civil liability on any person who entices, persuades, or induces any other person to go on board any vessel or to any other place with the intent that he or she be made or held as a slave, or sent out of the country to be so made or held.  18 U.S.C. § 1583(a)(2).

66.     Defendants enticed, induced, and persuaded Plaintiff to travel to the United States with false promises that she would be permitted to live with them while working in the District of Columbia metropolitan area and attending nursing school.  These representations were all untrue and meant solely to induce Plaintiff into a slave-like condition in the United States, where she was coerced to work nearly seventeen hours per day at menial tasks and under abusive conditions for no pay.

67.     As a result of Defendants' conduct, Plaintiff suffered damages.  Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.  Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff is also entitled to an award of punitive damages.

### SECOND CLAIM FOR RELIEF
TVPRA; Involuntary Servitude
(Thirteenth Amendment of the United States Constitution and 18 U.S.C. § 1584)
(Against François Ngoubene, Marie-Thérèse Ngoubene, and Caroline Ngoubene)

68.     Plaintiff incorporates each of the foregoing paragraphs by reference.

69.     The Thirteenth Amendment of the United States Constitution and its enforcing statute, 18 U.S.C. § 1584, prohibit involuntary servitude in private conduct.

70.     Defendants knowingly and willfully forced Plaintiff to work in a condition of involuntary servitude through legal coercion and verbal and physical threats directed at Plaintiff and her family.

71.     As a result of Defendants' conduct, Plaintiff suffered damages.  Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.  Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff is also entitled to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
TVPRA; Forced Labor
(18 U.S.C. §§ 1589, 1595)
(Against François Ngoubene, Marie-Thérèse Ngoubene, Caroline Ngoubene, Roxane Ngoubene, and Dany Ngoubene)

72.     Plaintiff incorporates each of the foregoing paragraphs by reference.

73.     The Forced Labor provision of the TVPRA, 18 U.S.C. § 1589(a), makes it a violation to knowingly provide or obtain the labor or services of a person by any one of, or by any combination of, the following means: (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

74.     Under the TVPRA, "[t]he term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."  18 U.S.C. § 1589(c)(2).

75.     As described above, Defendants cooperated to procure forced labor from Plaintiff by means proscribed in Section 1589(a).   As a result, Plaintiff was compelled to continue laboring for them under inhumane conditions and suffered damages.   Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendants' wrongful conduct.   Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff is also entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF
Trafficking Victims Protection Reauthorization Act; Trafficking Into Servitude
(18 U.S.C. §§ 1590, 1595)
(Against François Ngoubene and Marie-Thérèse Ngoubene)

76.     Plaintiff incorporates each of the foregoing paragraphs by reference.

77.     The trafficking into servitude provision of the TVPRA, 18 U.S.C. § 1590, provides that it is a violation to knowingly recruit, harbor, transport, provide, or obtain by any means, any person for labor or services in violation of the TVPRA.

78.     Defendants knowingly recruited, harbored, transported, and obtained Plaintiff to provide labor and services in violation of the TVPRA.

79.     Plaintiff suffered damages as a result of Defendants' conduct.

80.     Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees.   Because of the malicious and wantonly abusive nature of Defendants' conduct, Plaintiff is also entitled to an award of punitive damages.

### FIFTH CLAIM FOR RELIEF
Fair Labor Standards Act ("FLSA")
(29 U.S.C. §§ 201 *et seq.*)
(Against François Ngoubene)

81.     Plaintiff incorporates each of the foregoing paragraphs by reference.

82.     The FLSA, 29 U.S.C. § 206, provides that a person employed in domestic service in a household shall be paid the minimum wage as required by law.   This includes domestic service employees who live in the household where they are employed.  29 C.F.R. § 552.102.

83.     Defendant François Ngoubene ("Ngoubene") was an employer within the meaning of the FLSA but never paid Plaintiff the minimum wage for the services she provided to him and the other Defendants.

84.     Ngoubene knowingly and willfully required, suffered, or permitted Plaintiff, a non-exempt employee, to work hours well beyond a normal work day, including routinely working seventeen hours a day, seven days a week, and knowingly and willfully failed and refused to pay Plaintiff the minimum wage for hours worked as required under federal law.

85.     Ngoubene knew, should have known, or showed reckless disregard for the FLSA minimum wage provisions applicable to Plaintiff and willfully, intentionally, and without good faith violated these laws.   As a result of Ngoubene's willful violations of the FLSA, under 29 U.S.C. § 216(b), Plaintiff is entitled to recover her unpaid wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs in amounts to be proven at trial.

## SIXTH CLAIM FOR RELIEF
Maryland Wage and Hour Law ("MWHL")
(Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.* (West 2011))
(Against François Ngoubene)

86.     Plaintiff incorporates each of the foregoing paragraphs by reference.

87.     The MWHL, § 3-413, provides that an employer shall pay an employee at least the greater of the minimum wage as required by the FLSA or $6.15 per hour.

88.     The MWHL, §§ 3-415 and 420 provide that an employer shall pay an employee an overtime wage of at least 1.5 times the usual hourly wage on the basis of each hour over 40 hours that an employee works during one workweek, or on the basis of each hour over 60 for an employee who is exempt from the overtime provisions of the FLSA.

89.     During the time relevant to this action, Plaintiff was an employee and Defendant François Ngoubene was an employer within the meaning of the MWHL.

90.     By the actions described in this Complaint, and in violation of the MWHL, François Ngoubene failed and refused to pay Plaintiff the requisite minimum and overtime wages for the hours that she worked.

91.     As a result of Ngoubene's willful violations of the MWHL, under § 3-427, Plaintiff is entitled to recover the difference between the wages paid to her and the wages required under §§ 3-413, 415, and 420.

## SEVENTH CLAIM FOR RELIEF
Maryland Wage Payment and Collection Law ("MWPCL")
(Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* (West 2011))
(Against François Ngoubene)

92.     Plaintiff incorporates each of the foregoing paragraphs by reference.

93.     The MWPCL, § 3-502, provides that an employer shall pay an employee at least once in every two weeks or twice in each month.

94.     The MWPCL, § 3-505, provides that an employer shall pay an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

95.     Defendant François Ngoubene was an employer within the meaning of the MWPCL but failed to pay Plaintiff on a regular basis or upon the termination of her employment.

96.     More than two weeks have passed since Plaintiff's employment relationship with François Ngoubene terminated.

97.     François Ngoubene's failure to pay Plaintiff the wages owed her was not the result of a bona fide dispute.

98.     As a result of François Ngoubene's willful violations of the MWPCL, under § 3-507.2, Plaintiff is entitled to recover three times the wages owed to her and reasonable attorneys' fees and costs in amounts to be proven at trial.

### EIGHTH CLAIM FOR RELIEF
Fraud and/or Fraudulent Inducement
(Against François Ngoubene and Marie-Thérèse Ngoubene)

99.     Plaintiff incorporates each of the foregoing paragraphs by reference.

100.    In order to induce Plaintiff to come to the United States, Defendants François Ngoubene and Marie-Thérèse Ngoubene made false representations to Plaintiff, including representations about outside employment and the prospect of nursing school.

101.     Defendants were aware of the falsity of these representations when they made them, and the representations were made for the purpose of defrauding Plaintiff into traveling to the United States to live with Defendants and provide them with uncompensated menial labor.

102.     Plaintiff relied on Defendants' false representations in deciding to come to the United States.   Because of Defendants' deceptions, Plaintiff lost her freedom and lived and worked for no pay for over two years.   She has suffered compensable injury, including depression and insomnia as a result of her distress.   Defendants have refused to pay Plaintiff for the work she performed for them or to return to Plaintiff her personal belongings.

103.     Plaintiff is entitled to recover her damages in an amount to be determined at trial, and in any event may recover nominal damages for Defendants' fraud.   Further, Defendants' tortious conduct—which is continuing—has been aggravated by the willfulness, wantonness, and malice for which the law entitles Plaintiff to a recovery of exemplary damages.

## NINTH CLAIM FOR RELIEF
### False Imprisonment
(Against François Ngoubene, Marie-Thérèse Ngoubene, and Caroline Ngoubene)

104.     Plaintiff incorporates each of the foregoing paragraphs by reference.

105.     Defendants intentionally deprived Plaintiff of her liberty without her consent and without legal justification.   Defendant Caroline Ngoubene, representing herself to Plaintiff as an attorney, informed Plaintiff that she was "illegal," reinforcing the statements made by Defendant Marie-Thérèse Ngoubene that Plaintiff would be arrested if discovered by the police. Defendants cowed Plaintiff with verbal abuse, and suggested to her that any attempt to leave the family would result in repercussions against her and her family in Cameroon.

106.     Defendants had no legal authority for this detention.

107.    Plaintiff has suffered damages in an amount to be determined at trial, and in any event may recover nominal damages.  Further, Defendants' tortious conduct was aggravated by the willfulness, wantonness, and malice for which the law entitles Plaintiff to a recovery of exemplary damages.

## TENTH CLAIM FOR RELIEF
Intentional Infliction of Emotional Distress)
(Against François Ngoubene and Marie-Thérèse Ngoubene)

108.    Plaintiff incorporates each of the foregoing paragraphs by reference.

109.    Defendants acted with intent to cause Plaintiff emotional distress and/or a reckless disregard for the high probability that emotional distress would occur by, *inter alia*, verbally abusing Plaintiff, limiting her contact with the outside world, forcing her to live in inhumane conditions and eat only leftover scraps of food, depriving her of medical care, lying to her about her legal status and telling her she was under the constant threat of police arrest, and threatening her and her family with retaliation if she ever left or otherwise turned against the Defendants.

110.    Defendants' conduct was extreme and outrageous in nature and intolerable in a civilized society.

111.    Plaintiff suffered severe emotional distress as a direct result of Defendants' extreme and outrageous conduct toward her, including terrible fright, grief, shame, humiliation, worry, anxiety, and depression.  This, in turn, has caused her to experience physical reactions, including chronic insomnia.

112.    Plaintiff has suffered damages in an amount to be determined at trial, and in any event may recover nominal damages.  Further, Defendants' continuing tortious conduct has been

aggravated by the willfulness, wantonness, and malice for which the law entitles Plaintiff to a recovery of exemplary damages.

## ELEVENTH CLAIM FOR RELIEF
Conversion
(Against François Ngoubene and Marie-Thérèse Ngoubene)

113.    Plaintiff incorporates each of the foregoing paragraphs by reference.

114.    By refusing, and continuing to refuse, to return to Plaintiff her personal belongings, François and Marie-Thérèse Ngoubene exerted a distinct act of ownership or dominion over Plaintiff's personal property.  This act was in denial of and inconsistent with Plaintiff's rights to that property.

115.    Plaintiff is entitled to the fair market value of the property at the time the Ngoubenes' initial refusal to return it to her, along with interest accrued.

## TWELFTH CLAIM FOR RELIEF
Civil Conspiracy
(Against All Defendants)

116.    Plaintiff incorporates each of the foregoing paragraphs by reference.

117.    Upon information and belief, all of the Defendants coordinated their efforts, shared information and planned together against Plaintiff to commit the unlawful deeds described herein.

118.    Plaintiff has suffered damages in an amount to be determined at trial.  Further, Defendants' continuing tortious conduct has been aggravated by the willfulness, wantonness, and malice for which the law entitles Plaintiff to a recovery of exemplary damages.

## THIRTEENTH CLAIM FOR RELIEF
Aiding and Abetting
(Against Caroline Ngoubene)

119.    Plaintiff incorporates each of the foregoing paragraphs by reference.

120.    Defendant Caroline Ngoubene aided and abetted the other Defendants in committing the previously described tortious conduct by, *inter alia*, misrepresenting to Plaintiff that she was "illegal" and warning her that she could not leave the Ngoubenes' home, reinforcing Defendant Marie-Thérèse Ngoubene's threat that Plaintiff would be arrested if she attempted to leave.

121.    Upon information and belief, Defendant Caroline Ngoubene further aided and abetted the other Defendants by drafting Plaintiff's employment contract and other legal documents, which were used to improperly procure Plaintiff's visa.

122.    As a result of Caroline Ngoubene's actions, Plaintiff lived in fear of discovery and continued to endure the harsh living conditions imposed upon her by the Defendants, for which she received no pay.

123.    Plaintiff has suffered damages in an amount to be determined at trial.  Further, Caroline Ngoubene's tortious conduct has been aggravated by the willfulness, wantonness, and malice for which the law entitles Plaintiff to a recovery of exemplary damages.

### FOURTEENTH CLAIM FOR RELIEF
Aiding and Abetting
(Against Roxane Ngoubene)

124.    Plaintiff incorporates each of the foregoing paragraphs by reference.

125.    Upon information and belief, Defendant Roxane Ngoubene actively participated in and aided and abetted the other Defendants in the commission of the previously described tortious conduct by going through Plaintiff's belongings in an attempt to take her passport so that she would be prevented from escaping the Ngoubenes' home.

126.    Plaintiff has suffered damages in an amount to be determined at trial.  Further, Roxane Ngoubene's tortious conduct has been aggravated by the willfulness, wantonness, and malice for which the law entitles Plaintiff to a recovery of exemplary damages.

### FIFTEENTH CLAIM FOR RELIEF
Breach of Contract
(Against François Ngoubene)

127.    Plaintiff incorporates each of the foregoing paragraphs by reference.

128.    Defendant François Ngoubene is contractually bound by the Contract of Employment ("Contract") he executed with Plaintiff on January 16, 2006.

129.    François Ngoubene's actions as recited above constitute breach of the following provisions of the Contract: Article 3 (duty to compensate Plaintiff in accordance with United States Department of Labor's 2006 Wage Determination for Domestic Employees); Article 4 (duty to provide Plaintiff with 30 days compensated leave after one year of service); Article 7 (duty to not withhold Plaintiff's passport); and Article 8 (duty to not require Plaintiff to remain on premises after working hours without compensation).  Up until the time of her escape from Defendants' household in May 2008, Plaintiff had satisfied all of her obligations under the Contract.

130.    Plaintiff is entitled to all benefit of the bargain damages, including interest-adjusted lost wages over the employment period, which in turn include overtime payments and compensation for leave she was never permitted to take.

### SIXTEENTH CLAIM FOR RELIEF
Quantum Meruit
(Against all Defendants)

131.    Plaintiff incorporates each of the foregoing paragraphs by reference.

132.     Plaintiff has conferred significant benefits upon Defendants by performing the above-mentioned labor for them.

133.     Defendants have not tendered appropriate payment to Plaintiff for these services.

134.     Defendants are liable under quantum meruit for the services that Plaintiff provided.

135.     As a result of Defendants' conduct, Plaintiff has suffered damages.

136.     Plaintiff is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and the cost of this action.

## SEVENTEENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Against all Defendants)

137.     Plaintiff incorporates each of the foregoing paragraphs by reference.

138.     By providing Defendants with around-the-clock labor for more than two years, Plaintiff conferred substantial benefits on Defendants.

139.     Defendants accepted and retained the benefits conferred upon them by Plaintiff, but have provided Plaintiff with no compensation for those benefits.

140.     It would be inequitable for Defendants to be permitted to retain such benefits without paying Plaintiff the value of the benefits conferred.

141.     Accordingly, Plaintiff is entitled to an award equal to the value of the benefits conferred upon Defendants in an amount to be determined at trial, including attorneys' fees and the cost of this action.

## EIGHTEENTH CLAIM FOR RELIEF
### Promissory Estoppel

(Against François Ngoubene and Marie-Thérèse Ngoubene)

142.    Plaintiff incorporates each of the foregoing paragraphs by reference.

143.    When Defendants François Ngoubene and Marie-Thérèse Ngoubene made promises to Plaintiff to entice her to come with them to the United States, including the promises that Plaintiff would be able to live with Defendants while working outside their home and attending nursing school, Defendants should reasonably have expected Plaintiff to rely upon such promises.

144.    Plaintiff did rely upon Defendants' promises by choosing to travel to the United States, which led to her spending two years doing menial labor under harsh conditions with no pay.  This was time that Plaintiff might have spent pursuing other educational or professional opportunities in her home of Cameroon or elsewhere.

145.    Plaintiff's reliance on Defendants' promises was justified.

146.    Injustice can only be avoided through the award of damages to Plaintiff in an amount to be proved at trial.

**ACTION OF REPLEVIN**
Md. Code Ann., Md. Rules. § 12-601 (West 2011)
(Against François Ngoubene and Marie-Thérèse Ngoubene)

147.    Plaintiff incorporates each of the foregoing paragraphs by reference.

148.    Maryland Rule § 12-601(a) provides that "[a] person claiming the right to immediate possession of personal property may file an action under this Rule for possession before judgment."  Md. Rule. § 12-601(a).  A complaint seeking this relief "shall contain (1) a description of the property claimed and an allegation of its value, (2) an allegation that the

defendant unjustly detains the property, (3) a claim for return of the property, and (4) any claim for damages to the property or for its detention." *Id.* § 12-601(b).

149.     When Plaintiff escaped from the Defendants' home, she was forced to leave all of her and her daughter's belongings.  These included items of great sentimental value, such as pictures and other keepsakes, as well as almost all of Plaintiff's and her daughter's clothes. Many of the items, such as pictures and keepsake items, are priceless.  Those items for which a value can be determined are worth approximately $5,000.

150.     François Ngoubene and Marie-Thérèse Ngoubene are unjustly detaining Plaintiff's belongings by refusing to return them despite multiple requests to do so by Plaintiff.

151.     Plaintiff hereby makes a claim for the return of the property being unjustly detained by the Ngoubenes.

152.     Plaintiff is entitled to recover damages she suffered as a result of the Ngoubenes' unjust detention of her property, including the cost of buying new clothing and other items for her and her daughter.

153.     Accordingly, as soon as possible, the Court should issue a writ directing the sheriff to place Plaintiff in possession of her personal belongings pending final resolution of this lawsuit.

## EQUITABLE ESTOPPEL

154.     Due to their actions in preventing Ms. Elat from filing her Complaint at an earlier date and within certain limitations periods, Defendants are equitably estopped from asserting the defense of limitations.

**JURY DEMAND**

155.   Plaintiff requests a trial by jury.

## VI.   **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

1.   Issue a writ directing the sheriff to place Plaintiff in possession of her personal belongings pending final resolution of this lawsuit;

2.   Rule in favor of every cause of action asserted in the Complaint;

3.   Award such damages as may be appropriate, including punitive and liquidated damages;

4.   Award Plaintiff her attorneys' fees and costs;

5.   Award Plaintiff pre- and post-judgment interest; and

6.   Award any such other and further relief as the Court deems just and proper.


DATED this 10th day of February 2012.

Respectfully submitted,

BAKER BOTTS L.L.P.


/s/ Stephen M. Ng
    Sara E. Kropf
    U.S. District Court of Md. Bar No. 26818
    sara.kropf@bakerbotts.com

    Stephen M. Ng (admitted *pro hac vice*)
    Virginia State Bar No. 73265
    stephen.ng@bakerbotts.com

1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  (202) 639-7700
Fax:  (202) 585-4075

    Van Beckwith (admitted *pro hac vice*)
    Texas State Bar No. 02020150
    van.beckwith@bakerbotts.com

    Jonathan R. Mureen (admitted *pro hac vice*)
    Texas State Bar No. 24060313
    jon.mureen@bakerbotts.com

    Russell W. Fusco (admitted *pro hac vice*)
    Texas State Bar No. 24069743
    russell.fusco@bakerbotts.com

2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2080
Telephone:  (214) 953-6500
Facsimile:  (214) 855-8200

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2012, I caused a copy of the foregoing to be electronically filed with the United States District Court, District of Maryland, and notice will be served by operation of the Court's electronic filing system on representatives of all parties to this litigation:

>
> Bruce L. Marcus, Esq.
> Joseph A. Compofelice, Jr., Esq.
> MarcusBonsib, LLC
> 6411 Ivy Lane
> Suite 116
> Greenbelt, Maryland 20770
>
> Joseph B. Chazen, Esq.
> Gina M. Smith, Esq.
> Meyers, Rodbell & Rosenbaum P.A.
> 6801 Kenilworth Avenue
> Suite 400
> Riverdale Park, MD 20737
>
> Timothy F. Maloney, Esq.
> Joseph, Greenwald & Laake, P.A.
> 6404 Ivy Lane
> Suite 400
> Greenbelt, MD 20770

February 10, 2012

*/s/ Stephen M. Ng*
Stephen M. Ng (admitted *pro hac vice*)
Virginia State Bar No. 73265

***Attorney for Plaintiff Corine Elat***