UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

CORINE ELAT,
    Plaintiff,

v.                                                   Civil Action No. 11-2931-RWT

FRANÇOIS NGOUBENE, *et al*.

    Defendants.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH PROCESS AND/OR DISMISS FIRST AMENDED COMPLAINT

Plaintiff Corine Elat responds to Defendants' motion to quash process and/or dismiss her First Amended Complaint (the "Complaint"), on the basis of diplomatic immunity, running of the statutes of limitations, and failure to state a claim, as follows:

### INTRODUCTION

This is the second time that Defendants have moved to dismiss Ms. Elat's human trafficking complaint based on diplomatic immunity, and they use the same failed arguments as before (almost verbatim). As previously explained in Ms. Elat's opposition to Defendants' first motion to quash/dismiss, certificates of immunity from the State Department are required to prove immunity; immunity does not apply to the adult children of a diplomat; and even when a defendant meets his burden of producing a certificate of immunity, the immunity is subject to an exception for "commercial activities" like the human trafficking at issue here.[1] The only difference between this and Defendants' first motion is that François Ngoubene has now been able to secure a certificate of immunity for *himself*—the other defendants failed to do so despite

---

[1] *See* Pl.'s Mem. in Opp. to Defs.' Mot. to Quash Process and/or Dismiss on the Basis of Diplomatic Immunity (dkt. no. 26).

1

their asserted efforts to do so.  For reasons previously explained, however, François Ngoubene's certificate is not dispositive as to the claims against him, and indeed the certificate recognizes *on its face* that his immunity is subject to the "commercial activities" exception.

Defendants have also moved to dismiss Counts Five through Nineteen of the Complaint on statute of limitations grounds, and Count Three against Dany Ngoubene for failure to state a claim.  Defendants' limitations defense is precluded by the doctrine of equitable estoppel, which operates to toll the limitations period where (as here) defendants use threats to prevent the plaintiff from filing her complaint.  Defendants misstate the law when they suggest that, in pleading estoppel, Ms. Elat must comply with heightened pleading requirements that are applicable only to fraud claims.  Regarding Count Three, the factual allegations in the Complaint satisfy the requirements of 18 U.S.C. § 1589 and provide Dany Ngoubene with fair notice of Ms. Elat's claim against her under that statute.

**BACKGROUND**

The background for this case was described in more detail in Ms. Elat's prior opposition, *see* Pl.'s Mem. in Opp. to Defs.' Mot. to Quash Process and/or Dismiss on the Basis of Diplomatic Immunity (dkt. no. 26) ("Elat Opp." or "prior opposition"), and this section will only summarize facts necessary for the additional points addressed in this brief.  In short, Ms. Elat is a victim of human trafficking and forced labor.  The Defendants are François Ngoubene, an employee of the Embassy of Cameroon during the relevant time period, and his wife and adult children, all of whom cooperated and conspired to traffic Ms. Elat into forced labor and subject her to cruel and inhumane treatment.  Among other things, they conspired to lure her to America

under false promises of an education and opportunity to work outside the home, only to force her into a life of involuntary servitude upon her arrival. *See* Elat Opp. at 2–3.

Eventually, Ms. Elat was able to escape from the Ngoubenes' home. Less than three years after her escape, Ms. Elat sent a letter to the Ngoubenes through counsel, seeking compensation for her years of involuntary domestic service and informing the Ngoubenes of her intent to sue if they refused. Compl. ¶ 58. In response, Defendant Marie-Thérèse Ngoubene, on behalf of herself and the other defendants, began making daily telephone calls to Ms. Elat's mother, threatening to harm Ms. Elat and/or her family if she went forward with her intent to sue. *Id.* ¶ 59. These threats caused Ms. Elat to delay filing her original complaint. *Id.* ¶ 61. After filing her original complaint in this action, Defendant Marie-Thérèse Ngoubene continued this pattern of threats to try to prevent Ms. Elat from seeking justice for the harm she sustained at the hands of the Defendants. *Id.* ¶ 62.

## ARGUMENT AND AUTHORITIES

I.  **Legal Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses omitted). In order to satisfy this standard and survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "does not need detailed factual allegations," but instead must assert sufficient facts "to raise a right to relief above the speculative level," i.e. enough facts "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. When ruling on a Rule 12(b)(6) motion to dismiss, the

3

court must accept as true all factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "all reasonable inferences [must be drawn] in favor of the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

## II. Defendants Are Not Entitled To Diplomatic Immunity

The new certificate of immunity obtained by François Ngoubene does not mandate the dismissal of Ms. Elat's Complaint. The certificate does not impact the court's analysis as to François Ngoubene's adult children and it does not avoid application of the "commercial activity" exception to François Ngoubene's immunity.

Ms. Elat will not repeat all of her prior arguments explaining why diplomatic immunity does not apply here. *See* Elat Opp. at 3–10. Instead, as necessary, she will refer to her prior brief and incorporate it by reference.

### A. Defendants have failed to present any evidence that Defendants Caroline, Dany, Roxane, and Collins Ngoubene are entitled to diplomatic immunity

As noted above, the State Department apparently refused Defendants' requests for the necessary certificates of immunity as to François Ngoubene's adult children, despite Defendants' strenuous efforts to obtain them. *See, e.g.*, Defendants' Consent Motion for Extension of Time (dkt. no. 28) at 2 (indicating that Defendants were attempting "to obtain a certificate confirming the diplomatic status and immunity of Defendants").

This confirms what Ms. Elat previously explained—immunity does not extend to children of a diplomat who are over the age of 21 (or 23 if full-time students), because such adult children are not within the definition of "household" used by the State Department. *See* Elat Opp. at 3–4.

Instead of presenting evidence that they are currently within the "household" of François Ngoubene and thus entitled to share his immunity, Caroline, Dany, Roxane, and Collins

4

Ngoubene argue that they are somehow entitled to immunity because Ms. Elat did not allege that "any of the Ngoubene children were adults *at the time* of any of the alleged acts complained of." Defs.' Reply to Pl.'s Opp. to Mot. to Quash Process and/or to Dismiss Compl. (dkt. no. 32) ("Defs.' Reply") at 2 (emphasis added). Such an argument fails as an initial matter because it is Defendants, not Ms. Elat, that have the burden of proving their entitlement to immunity. *See*, *e.g.*, 22 U.S.C. § 254d (indicating that diplomatic immunity "may be established upon motion or suggestion by or on behalf of the individual" asserting immunity); *Jungquist v. Nahyan*, 940 F. Supp. 312, 321–22 (D.D.C. 1996), *rev'd in part on other grounds*, 115 F.3d 1020 (D.C. Cir. 1997) (denying defendants' motion to dismiss on the basis of diplomatic immunity for lack of evidence); *Mazengo v. Mzengi*, 542 F. Supp. 2d 96, 100–01 (D.D.C. 2008) (denying motion to vacate default judgment where the defendant failed to establish that he was entitled to diplomatic immunity). Placing this burden on the party asserting immunity is proper given that plaintiffs cannot be presumed to know whether a defendant is entitled to immunity and many plaintiffs may not know the precise ages and educational status of the individuals they are suing.

Further, Defendants have presented no authority to support their position that a defendant's diplomatic immunity is judged as of the time of his unlawful actions as opposed to the time when he asserts his immunity as a defense. Their argument is contradicted by the settled principle that diplomatic immunity is based on the status of the individual *at the time of the legal proceedings,* not his or her status (e.g., age) at the time of the offense. *See* Elat Opp. at 10–12; *Swarna v. Al-Awadi*, 622 F.3d 123, 134 (2d Cir. 2010) (holding that former diplomat did not enjoy immunity for offenses committed while he was still in diplomatic service); *Baoanan v. Baja*, 627 F. Supp. 2d 155, 170 (D.D.C. 2009) (same). In addition, Defendants fail to respond to

the State Department's unambiguous definition of the diplomat's immunized "household" as being limited to "children until the age of 21 ([or] until the age of 23 if they are full-time students at an institution of higher learning)." State Department, Bureau of Diplomatic Security, Diplomatic and Consular Immunity: Guidance for Law Enforcement and Judicial Authorities at 8 n.3 (dkt. no. 26.1, Ex. A). Under this definition, once an individual is no longer 21 (or 23 if a full-time student), he is no longer part of the diplomat's "household" and thus not entitled to immunity, regardless of any immunity that existed at the time of the alleged offense.

**B.  Defendants are not entitled to immunity because the "commercial activity" exception to diplomatic immunity applies**

Even as to François and Marie-Thérèse Ngoubene, diplomatic immunity does not apply. As François Ngoubene's certificate of immunity makes clear, there is an exception to his diplomatic immunity for claims—like those asserted by Ms. Elat—which relate "to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." *See* Certificate of Immunity of François Ngoubene, Dkt. No. 35.1 at 2; *see also* VCDR Art. 31(1)(c). As explained in Ms. Elat's prior opposition, this exception to diplomatic immunity applies in this case because François Ngoubene engaged in "commercial activity" by trafficking Ms. Elat into a life of forced labor, an act clearly "outside his official functions." *See* Elat Opp. at 7–10.

Defendants only superficially respond to Ms. Elat's assertion that the "commercial activity" exception applies to her claims, merely repeating their former argument that all of the relevant case law consistently holds that the employment of domestic servants is not a "commercial activity" for purposes of the "commercial activity" exception. *See* Defs.' Reply at 6–7. This argument simply misses the point. Ms. Elat's claims arise not from François

6

Ngoubene's "employment of [a] domestic servant[]," but rather from Defendants' tricking Ms. Elat into believing that she was coming to the United States to study nursing and work <u>outside the Ngoubene home</u> and then instead trafficking her into a life of forced labor. All of Defendants' cases are inapposite because they all involve plaintiffs who knowingly came to the United States to work as domestic servants and Defendants have failed to explain why the holdings in those cases would apply to Ms. Elat's claims.

## C. Any dismissal based on diplomatic immunity should be without prejudice

Finally, Defendants argue that any dismissal based on diplomatic immunity should be with prejudice. Defs.' Reply at 7. Defendants again fail, however, to cite any case law requiring such a result or respond to Ms. Elat's argument that any immunity Defendants currently have would end once François Ngoubene is no longer a diplomat in the United States, at which time Ms. Elat would be able to reassert any immunized claims. *See* Elat Opp. at 10–12 (citing *Swarna*, 622 F.3d at 134; VCDR Art. 39(2); *Baoanan*, 627 F. Supp. 2d at 155).

Further, Defendants' own cases directly contradict their argument. In *Gonzalez Paredes v. Vila*, 479 F. Supp. 2d 187 (D.D.C. 2007), a case Defendants cite for the principle that diplomatic immunity mandates dismissal, the court found that the defendants were immune, but dismissed the complaint "without prejudice to the claims being re-filed if and when the defendants are no longer diplomatically immune from suit." *Id*. at 189; *see also Swarna*, 622 F.3d at 130 (noting that the district court dismissed the case "without prejudice because Swarna could plausibly institute a new action against the individual defendants . . . after their association with the Kuwaiti Mission had terminated" and that the plaintiff had successfully filed suit once

7

the defendants were no longer employed by the Kuwaiti Mission). That is exactly what Ms. Elat is requesting. Defendants have given no reason to depart from the holding in *Gonzalez Paredes*.

In addition, while the Defendants question how Ms. Elat's claims would "survive the expiration of the applicable statute of limitations," Defs.' Reply at 7, if the Court finds that any defendant is entitled to diplomatic immunity, then the statute of limitations for Ms. Elat's claims against that defendant have been tolled to this point and will continue to be tolled until that defendant is no longer entitled to immunity; only then will the statute of limitations even begin to run. *See Gonzalez Paredes*, 479 F. Supp. 2d at 189 n.2 (recommending that the statute of limitations on claims currently barred by diplomatic immunity "be tolled until such time as the defendants are not immune from suit") (citation omitted).

Dismissing without prejudice any claims subject to diplomatic immunity and tolling the statute of limitations until immunity no longer applies is also consistent with the purposes of such immunity. "Modern international law has adopted diplomatic immunity under a theory of functional necessity." *Swarna*, 622 F.3d at 134 (citation and internal brackets and quotation marks omitted). This immunity, however, "exists not to benefit individuals but to ensure the efficient performance of the functions of diplomatic missions as representing States." *Id*. (citation and internal quotation marks omitted). Therefore, because diplomatic immunity is not for the benefit of the individual diplomats, this immunity should not forever shield them from having to answer for their unlawful acts. Defendants' argument that Ms. Elat's claims should be dismissed with prejudice and that the applicable statutes of limitations should run during François Ngoubene's diplomatic service would have precisely this result. It should be rejected.

### III. Defendants Cannot Assert an Affirmative Statute of Limitations Defense After Using Threats to Intimidate Ms. Elat and Delay the Filing of Her Claims

In their original motion to dismiss, Defendants argued that the claims in Counts Five through Nineteen were barred by the applicable statutes of limitations. Ms. Elat thus filed an amended complaint to clarify allegations showing that the doctrine of equitable estoppel tolled the limitations period. That doctrine applies because Defendants threatened to harm Ms. Elat and her family if she filed suit, which prevented her from filing her original complaint sooner.

Defendants have renewed their motion to dismiss on the grounds that Ms. Elat's factual allegations are too "vague" and "conclusory." To the contrary, Ms. Elat's allegations show that equitable estoppel applies and thus these allegations satisfy the Rule 12(b)(6) standard.

#### A. Defendants are equitably estopped from relying on a statute of limitations defense on all counts

As alleged in the Complaint, the Defendants threatened Ms. Elat and her family in order to intimidate Ms. Elat and prevent her from filing suit. These actions equitably estop the Defendants from being able to assert an affirmative statute of limitations defense under both federal and Maryland law on all counts. *See English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987); *Murphy v. Merzbacher*, 697 A.2d 861, 866 (Md. 1997).

Federal courts apply the doctrine of equitable estoppel where the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline. *English*, 828 F.2d at 1049. Courts have sometimes used the term equitable tolling to refer to the same basic doctrine. *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) ("[Equitable tolling] has been applied in 'two generally distinct kinds of situation. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant.'")

(quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). The doctrine of equitable tolling/estoppel has been acknowledged to apply to claims under the Fair Labor Standards Act ("FLSA"), such as Ms. Elat's claim in Count Five of the Complaint. *See Chao v. Virginia*, 291 F.3d 276, 283 (4th Cir. 2002).

Maryland courts also have recognized and applied the doctrine of equitable estoppel, which is rooted in the fundamental principle that the law will not permit a party to take advantage of his or her wrongs.[2] *Margos v. Maroudas*, 40 A.2d 816, 819 (1945). The case of *Bayshore Industries v. Ziats* is particularly instructive. 192 A.2d 487 (Md. 1963), *overruled in part on other grounds*, *Travelers Indem. Co. v. Nationwide Const. Corp.*, 224 A.2d 285, 293 (Md. 1966). In that case, an employee seeking reimbursement for work-related injuries was told by her employer that the company would not pay for her injuries and that if she filed a claim for workers' compensation, "you will be sorry. You will never work here again and probably no where around here any more." *Id.* at 489. The claimant eventually brought a claim, but it was filed six months beyond the statute of limitations. *Id.* at 488. Nevertheless, the Maryland Court of Appeals held that the threats to the employee amounted to "clearly inequitable conduct" and that the employer was "estopped from profiting by such conduct" by being allowed to assert a

---

[2] Estopping Defendants from asserting the statute of limitations as a defense is consistent with one of the primary purposes of that defense: to ensure fairness to defendants by providing them with notice of a claim within a sufficient period of time to permit them to take necessary steps to gather and preserve the evidence needed to defend against the suit. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 753 (Md. 2007) (quoting *Phillip Morris USA, Inc. v. Christensen*, 905 A.2d 340, 357–58 (Md. 2006)); *see also Marshek v. Bd. of Trs. of Fire & Police Emps.' Ret. Sys. of City of Baltimore*, 749 A.2d 774, 780 (Md. 2000) ("[T]he statute of limitations grants repose to potential defendants that would be disadvantaged unfairly by stale claims due to unreasonably long delay."). Where defendants, like here, have clear notice of the plaintiff's claims and her intent to file suit within the statutory period, but use threats to delay filing, the fairness concerns animating the statute of limitations defense are not present. *See Haas,* 914 A.2d at 753.

statute of limitations defense. *Id.* at 491; *see also Murphy*, 697 A.2d at 866 (acknowledging that threats of physical harm can equitably estop a defendant from claiming the affirmative defense of Maryland's general three-year limitations statute).

The basis for Ms. Elat's claim of equitable estoppel is set forth clearly and specifically in the Complaint. Ms. Elat alleges that she informed the Ngoubenes of her intent to file a suit if they did not compensate her for her years of unpaid, forced labor. Compl. ¶ 58. Ms. Elat made this demand less than three years after her escape from the Ngoubene home, well within any applicable statute of limitation. *Id.* In response to receiving these communications, Defendant Marie-Thérèse Ngoubene made "daily telephone calls to Plaintiff's mother in Cameroon threatening to harm Plaintiff and/or her family if Plaintiff proceeded with her intent to sue the Ngoubenes." *Id.* ¶ 59.

These facts establish equitable estoppel and indeed offer more compelling grounds to apply the doctrine than those in *Bayshore Industries*, in which the court properly found that the defendant was precluded from asserting statute of limitations as a defense. In that case, the defendant merely threatened to undermine the plaintiff's future employment, 192 A.2d at 489, whereas here Defendants directly threatened to harm Ms. Elat and her family, a more coercive and repugnant threat. Compl. ¶¶ 58–60. Further, in *Bayshore Industries*, the plaintiff filed suit six months beyond the statute of limitations, whereas Defendants assert Ms. Elat's claims are only four months too late. Therefore, if the allegations in *Bayshore Industries* were sufficient to preclude the defendant from asserting statute of limitations as a defense, then so should Defendants in this case be precluded from asserting a similar defense.

### B. Ms. Elat's allegations satisfy the applicable pleading standard

In their motion to dismiss, Defendants concede that the applicable statutes of limitations for Ms. Elat's claims in Counts Five through Nineteen of the Complaint can be subject to equitable estoppel of the kind alleged by Ms. Elat in the Complaint. *See* Mem. of Law in Supp. of Defs.' Mot. to Quash Process and/or to Dismiss First. Am. Comp. and Action of Replevin (dkt. no. 33-1) ("Defs.' Mem.") at 17, 19. They argue, however, that these counts should nevertheless be dismissed because they do not meet certain heightened pleadings standards that Defendants argue should apply. They are wrong.

To argue that a heightened pleading standard applies, Defendants misplace their reliance on *Dual Inc. v. Lockheed Martin Corp.*, 857 A.2d 1095, 1106 (Md. 2004) which applied a heightened standard to an assertion of equitable tolling based on <u>*fraudulent concealment*</u>. But this was because under Maryland law, a plaintiff alleging fraudulent concealment must plead "with specificity the supporting facts in its complaint." *Id.* (citation omitted). Similarly, the heightened pleading standard in federal courts applies to claims or defenses alleging "fraud or mistake," Fed. R. Civ. P. 9(b), and thus only applies to equitable tolling defenses based on "fraudulent concealment" or the like. *See Tedder v. Deutsche Bank Nat. Trust Co.*, Civil No. 11–00083 LEK–KSC, 2012 WL 1028125, at *13 (D. Haw. Mar. 23, 2012) ("Where the basis of equitable tolling is *fraudulent concealment*, the basis for tolling must be pled with particularity pursuant to Fed.R.Civ.P. 9(b)." (emphasis added)).

This heightened pleading standard is therefore inapplicable to Ms. Elat's assertion of equitable estoppel as she has no intent to assert fraud or fraudulent concealment or mistake. Instead, Ms. Elat's allegations of equitable estoppel must merely set forth a "short and plain

statement" of Ms. Elat's claim for relief. Fed. R. Civ. P. 8(a). In doing so, Ms. Elat is only required to allege sufficient factual allegations "to raise a right to relief above the speculative level," i.e. enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. Ms. Elat's allegations clearly satisfy this pleading standard as the Complaint contains specific factual allegations showing that Defendants threatened Ms. Elat and her family with the intent and effect of intimidating her and causing her to delay filing suit. These allegations are more than sufficient to assert a "plausible" claim to equitable estoppel that raises Ms. Elat's "right to relief above the speculative level." *Id*.

In *Goodman v. Praxair, Inc.*, 494 F.3d 458 (4th Cir. 2007) (en banc), the Fourth Circuit held that, "a defendant that seeks to dispose of the complaint *before* asserting an affirmative defense must show that Plaintiff's rejoinder to the affirmative defense has already been foreclosed by the allegations in the complaint." *Id*. at 466. This is because "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. (quoting *Twombly*, 550 U.S. at 563). The Defendants have failed to make this showing. There is nothing in the Complaint that forecloses Ms. Elat's theory of equitable estoppel and there exists a "set of facts consistent with the allegations in the complaint" that would sustain her entitlement to estoppel under the precedent in *Bayshore*.

Defendants also contend that Ms. Elat "failed to address or explain why the alleged threats initially induced her to delay the filing, but although the threats continued, she was still able to commence her lawsuit in October." Defs.' Mem. at 18. Ms. Elat owes Defendants no such explanation under Rule 12(b)(6). If anything, the fact that Ms. Elat was able to conquer her

13

fear and confront her tormentors by filing this suit, even in the face of past threats and the likelihood of future threats, is evidence of her bravery, for which she should not be punished.[3]

## IV. Count Three Sufficiently Pleads A Claim Against Dany Ngoubene

Count Three of the Complaint contains sufficient facts to state a claim against Dany Ngoubene under 18 U.S.C. § 1589 that is plausible on its face.[4] *See Twombly*, 550 U.S. at 570.

The allegations in the Complaint show that Dany Ngoubene knowingly obtained "the labor or services of [Ms. Elat] by any one of, or by any combination of, the following means: . . . (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a).

For example, the Complaint recounts that Dany Ngoubene, in violation of 18 U.S.C. § 1589(a)(4) engaged in a "scheme, plan, or pattern" with the other Defendants to cause Ms. Elat to believe that if she did not perform the domestic tasks the Ngoubenes demanded then she would "suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(4); *see also* 18 U.S.C. § 1589(c)(2) (defining "serious harm" as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all surrounding circumstances, to compel a reasonable person of the same background and in the same

---

[3] The remaining arguments Defendants raise concerning the statutes of limitations—which relate to when Ms. Elat's claims *accrued*—are irrelevant. Regardless of when Ms. Elat's claims accrued, the length of the limitations period was extended due to Defendants' threats.

[4] Ms. Elat presumes that Defendants' argument about Count Three pertains to Dany Ngoubene, although, at times, Defendants' argument seems to be confused as to whether they are asking the Court to dismiss Count Three against Dany Ngoubene or Collins Ngoubene. *See* Defs.' Mem. at 24–26. Ms. Elat does not assert Count Three against Collins Ngoubene. *See* Compl. at 16.

circumstances to perform or to continue performing labor services in order to avoid incurring that harm"). Dany Ngoubene contributed to this scheme by "isolat[ing] [Ms. Elat] from the outside world and otherwise prevent[ing] her from leaving the Ngoubenes' home." *See* Compl. ¶ 28. Dany Ngoubene further participated in enforcing a rule that did not permit Ms Elat from leaving the Ngoubene home unless accompanied by one of the Defendants. *Id*. ¶ 29.

Dany Ngoubene also violated 18 U.S.C. § 1589(a)(3) by participating in the threat that Ms. Elat would be deported if she tried to leave the Ngoubenes' control, an abuse of the immigration laws and legal process. *See* 18 U.S.C. § 1589(c)(1) (defining "abuse or threatened abuse of law or legal process" under Section 1589(a)(3) as "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for the purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action"). Specifically, the Complaint alleges that Dany Ngoubene collaborated with the other defendants to "impose a sense of hopelessness and isolation on Plaintiff by making her believe that she could not leave because she was 'illegal' and did not have the appropriate papers to go anywhere else." Compl. ¶ 34.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Quash Process and/or to Dismiss the First Amended Complaint and Action of Replevin should be denied.

Respectfully submitted,

BAKER BOTTS L.L.P.


*/s/ Stephen M. Ng*
    Sara E. Kropf
    U.S. District Court of Md. Bar No. 26818
    sara.kropf@bakerbotts.com

    Stephen M. Ng (admitted *pro hac vice*)
    Virginia State Bar No. 73265
    stephen.ng@bakerbotts.com

1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 639-7700
Fax: (202) 585-4075

    Van Beckwith (admitted *pro hac vice*)
    Texas State Bar No. 02020150
    van.beckwith@bakerbotts.com

    Jonathan R. Mureen (admitted *pro hac vice*)
    Texas State Bar No. 24060313
    jon.mureen@bakerbotts.com

    Russell W. Fusco(admitted *pro hac vice*)
    Texas State Bar No. 24069743
    russell.fusco@bakerbotts.com

2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2080
Telephone: (214) 953-6500
Facsimile: (214) 855-8200

*ATTORNEYS FOR PLAINTIFF*

# CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2012, I caused a copy of the foregoing to be electronically filed with the United States District Court, District of Maryland, and notice will be served by operation of the Court's electronic filing system on representatives of all parties to this litigation:

Bruce L. Marcus, Esq.
Joseph A. Compofelice, Jr., Esq.
MarcusBonsib, LLC
6411 Ivy Lane
Suite 116
Greenbelt, Maryland 20770

Joseph B. Chazen, Esq.
Gina M. Smith, Esq.
Meyers, Rodbell & Rosenbaum P.A.
6801 Kenilworth Avenue
Suite 400
Riverdale Park, MD 20737

Timothy F. Maloney, Esq.
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane
Suite 400
Greenbelt, MD 20770

April 13, 2012 /s/ *Stephen M. Ng*
Stephen M. Ng (admitted *pro hac vice*)
Virginia State Bar No. 73265

**Attorney for Plaintiff Corine Elat**