**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

CORINE ELAT

Plaintiff,

v. Civil Action No.: RWT-11-2931

FRANCOIS NGOUBENE, *et al.*

Defendants.

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Caroline Ngoubene, Dany Ngoubene, and Roxane Ngoubene, by and through undersigned counsel, and pursuant to Fed. R.Civ. P. 12(b)(6), move this Honorable Court to dismiss Plaintiff's Second Amended Complaint, and as grounds state as follows:

1. The three-year statute of limitations for Counts Two through Five is not tolled and has run and those claims should be dismissed against all Defendants.

2. Plaintiff fails to state a claim upon which relief can be granted.

3. In further support of this Motion, Defendants also hereby incorporate the attached Memorandum of Law.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/ *Timothy F. Maloney*
Timothy F. Maloney, Esq. (Bar No. 03381)
Hina Z. Hussain, Esq. (Bar No. 18323)
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 441-220-2200

(301) 220-1214 (fax)
tmaloney@jgllaw.com
hhussain@jgllaw.com
*Attorneys for Defendants,*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5 day of July, 2012, a copy of the foregoing was filed and served upon the following parties and counsel though the CM/ECF System for the United States District Court for the District of Maryland:

Sara E. Kropf, Esq.
Steven M. Ng., Esq.
Baker Botts, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Jonathan R. Mureen, Esq.
Russel W. Fusco, Esq.
Van Beckwith, Esq.
Baker Botts, L.L.P.
2001 Ross Ave., Suite 600
Dallas, Texas 75201-2980
*Attorneys for Plaintiff*

__*/s/ Hina Z. Hussain*__________
Hina Z. Hussain

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

CORINE ELAT

Plaintiff,

v. Civil Action No.: RWT-11-2931

FRANCOIS NGOUBENE, *et al.*

Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Caroline Ngoubene, Dany Ngoubene, and Roxane Ngoubene, by and through their respective undersigned counsel, state the following in support of their Motion to Dismiss Plaintiff's Second Amended Complaint:

## I. Introduction

On June 4, 2012, Plaintiff filed a Second Amended Complaint in this matter. With two strikes already against her, Plaintiff files this most recent Complaint in the hopes that toll the statute of limitations and save her claims from dismissal under the *Twombly* and *Iqbal* pleading standard. But just as with the first two complaints, this Complaint does not allege sufficient facts that would warrant an equitable tolling of the statute of limitations, and likewise still does not state a claim upon which relief can be granted. Plaintiff strikes out once again.

## II. Relevant Background

On October 13, 2011, Plaintiff filed her initial complaint against Francois Ngoubene, Marie Therese Ngoubene, Caroline Ngoubene, Roxane Nbougene, Dany Ngoubene, and Collins Ngoubene ("Ngoubene Family") listing a litany of common law claims and claims under federal trafficking statutes. (Dkt. No. 1). Summarily, Plaintiff claimed that in April of 2006, Francois

and Marie-Therese brought her to the U.S. from Cameroon under false pretenses and forced her perform domestic work under unpleasant conditions and without compensation.

Plaintiff stated in her complaint that she escaped Defendants on about May 2, 2008, but she filed this action in October of 2011, months after the three-year statute of limitations for her common law claims had expired. Defendants, through counsel, informed Plaintiff's counsel via letter that her claims are barred by the running of the statute of limitations and that Defendants are immune from suit because of diplomatic immunity stemming from Francois's position as Counselor of the Cameroonian Embassy. (Dkt. No. 14, Exhibit 1). Nevertheless, Plaintiff did not withdraw her complaint.

Defendants filed a Motion to Quash or Dismiss on the grounds stated in their letter-statute of limitations and diplomatic immunity. (Dkt. No. 24). Plaintiff then amended her Complaint to add allegations that she had delayed filing her Complaint past the three year statute of limitations because of threats from the Defendants. (Dkt. No. 27).

Defendants then filed a Motion to Dismiss the Amended Complaint again on grounds of diplomatic immunity and that the new allegations did not excuse Plaintiff's claims from being untimely. (Dkt. No. 24). On May 14, 2012, this Court heard arguments on Defendants' Motion to Dismiss and Plaintiff's Opposition. The Court held that Francois Ngoubne has diplomatic immunity for all the claims alleged against him, and held that because diplomatic immunity extends to spouses and children under 21, that Marie Therese and Collins Ngoubene were immune from all claims against them as well. (Dkt. No. 43). The Court also held that Plaintiff had not submitted sufficient allegation of threat in the Amended Complaint to prevent the tolling of the statute of limitations against Caroline, Roxane and Dany Ngoubene. Instead of immediately dismissing the case, however, the Court gave Plaintiff one more opportunity to

further amend her complaint to see if it could survive the statute of limitations. In response to the Court's order, Plaintiff filed her Second Amended Complaint. As set forth more fully herein, this most recent Complaint does not cure the deficiencies in her First Amended Complaint. Despite being given three chances, Plaintiff's claims cannot be saved and they must be dismissed with prejudice this time.

## III. Legal Analysis

### a. Standard of Review

To survive a motion to dismiss, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1973-74 (2007). This plausibility standard is not "a probability requirement," and requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009); *See* also *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (stating that entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations omitted). As such, when the facts of the Complaint "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Iqbal*, 129 S.Ct. at 1950.

While a motion to dismiss under Rule 12(b)(6) generally cannot reach the merits of an affirmative defense, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). This principle applies where all the facts necessary to the affirmative defense "clearly appear *on the face of the complaint*." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993)) (emphasis in original). Further, " '[a] complaint showing

that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading,' rendering dismissal appropriate." *Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d 410, 413 (D. Md. 2010) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 352 (1990); *Porter v. GreenPoint Mortg. Funding, Inc.*, 2011 U.S. Dist. Lexis 148742, 8 (D. Md. 2011) (citing *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)) ("when the face of the Complaint clearly reveals the existence of a meritorious affirmative defense, a circumstance that most commonly arises in cases where the statute of limitations has run on the claim.").

**b. The allegations in the Second Amended Complaint pertaining to equitable tolling are not made against the Defendants, and they should, therefore, the common law counts should be dismissed.**

Count II for false imprisonment, Count III for quantum meruit, Count IV for unjust enrichment, and Count V for replevin are subject to a three year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101. Generally, in Maryland all actions accrue when the claimant in fact knew or reasonably should have known of the wrong. *See Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md. App. 288, 296 (2003). Plaintiff's operative Complaint makes clear she was fully aware of all the wrongs allegedly committed against her by May of 2008 when she left the Ngoubene home. (Sec. Amend. Compl. ¶ 55). Since Plaintiff filed this action in October of 2011, there is no doubt that she failed to file in the statutory three-year time frame. In an attempt to subvert statutory deadlines, Plaintiff alleges that statute of limitations should be equitably extended in this instance because she was intimidated by Defendants from filing suit.

This Court already determined that the allegations in the Amended Complaint were insufficient to withstand the statute of limitations on the Maryland common law counts. The

question now before the Court is whether the allegations that were added in the Second Amended Complaint are sufficient to toll the statute of limitations for Counts Two through Five.

It is a well-established doctrine that statutes of limitations are strictly construed. *Porter*, 2011 U.S. Dist. Lexis 148742 at 13; *Murphy v. Merzbacher*, 346 Md. 525 (1997). Nevertheless, Maryland has recognized rare exceptions to toll the statute of limitations, such as for fraud or duress. *Murphy*, 346 Md. at 532. The general principle behind these exceptions is found in the "the ancient maxim that no one should profit by his own conscious wrong." *Bayshore Industries, Inc. v. Ziats*, 232 Md. 167, 177 (1963). This notion to equitably toll the statute of limitations was recognized to prevent a party's unconscionable words or actions from extinguishing rights or enforcements of claims. *Travelers Indem. Co. v. Nationwide Constr. Corp.*, 244 Md. 401, 414 (1966).

These exceptions, however, are not to be lightly construed or freely applied. In *Murphy*, for example, the plaintiffs alleged that Merzbacher molested and raped them as children, often at gun-point, and then threatened again at gun-point to murder the plaintiffs and their families if they ever told anyone. *Murphy*, 349 Md. at 529. Years later, after all the children had reached the age of majority, and Merzbacher was indicted for his actions, his victims filed a civil suit against him. *Id*. Even under these atrocious circumstances, the court did not toll the statute of limitations.

As in *Murphy*, the mere fact that allegations might indicate undesirable or adverse circumstances is not sufficient to toll the statute of limitations. More importantly, the new allegations in the Second Amended Complaint that are supposed to toll the statute are not made against Defendants, but rather are made against individuals who are not party to this case. Ms. Elat does not allege unconscionable conduct on behalf of Caroline, Roxane, and Dany that would allow her claims to be preserved beyond the statute of limitations.

Paragraphs 1-56 of the Second Amended Complaint, as they relate to Caroline, Dany, and Roxane, are similar to the allegations this Court has already deemed insufficient. Paragraphs 57-66 titled under the section "Defendants Abuse Continues After Plaintiff's Escape and Delays Lawsuit", however, present new facts that are supposed to show that Defendants threatening and violent conduct Plaintiff was not able to timely file her claim. These allegations are addressed individually here:

**Paragraphs 57-58**

In paragraph 57, Plaintiff generally states that the Ngoubene Family repeatedly threatened her and her family with violence and deportation to prevent her from filing suit. This paragraph does not contain any allegations regarding the dates these threats were made, which family members specifically made the threats, how they were communicated, how frequently they were made, or what the threats allegedly were.

Paragraph 58 is more specific in that it states that in response to her attorney's letter for compensation to the Ngoubene family, Ms. Elat was faced with violence. In particular, Plaintiff states that "[o]n or about September 6, 2008, at approximately 11 p.m., Guy Patrick Ewounkem, the brother of Marie-Therese Ngoubene and the uncle of the Defendants, came to the business where Plaintiff was employed. He proceeded to severely beat Plaintiff and her husband. (Following this event, the District Court of Maryland for Montgomery County issued a Protective Order against Mr. Ewounkem that forbade him from threatening, abusing, contacting, or entering Plaintiff s residence or place of employment.)." Even assuming this statement was true, it is insufficient to toll the statute of limitations because there is nothing that connects the unlawful conduct alleged to the Defendants, aside from a familial relationship.

There are no allegations that Defendants knew of, aided, approved, consented to, authorized, or encouraged Mr. Ewounkem's conduct. There are no allegations that Defendants asked or paid Mr. Ewounkem to do what he allegedly did. There are no allegations that Mr. Ewounkem was acting as an employee of or for the benefit of Defendants or at their behest. There are no allegations that Defendants and Mr. Ewounkem ever even communicated with each other regarding Ms. Elat.

The page and a half complaint for the Protective Order that Plaintiff wrote out, attached here as Exhibit 1, does not once ever mention Caroline, Dany, Roxane, or any other member of the Ngoubene family. The application alleges that Mr. Ewounkem and Ms. Elat had a dispute over his interference in her life. The complaint does not state that Mr. Ewounkem was acting on behalf of Defendants or even mentioned Defendants in his altercation with Plaintiff. The fact that Mr. Ewounkem is Defendants' uncle is completely insufficient to connect his conduct to them.

**Paragraphs 59-61**

Paragraphs 59, 60, and 61 make no mention of any of the Defendants. These paragraphs only discuss Francois and Marie-Therese's conduct, both of whom are diplomatically immune and have been dismissed from this action. In paragraph 59 it states that "[Plaintiff's Mother] said that *Marie-Therese Ngoubene* was in Cameroon threatening to send people to hurt Plaintiff and her family or have them deported." (Emphasis added).

In paragraph 60, Plaintiff alleges "on April 21, 2010, Plaintiff's attorneys sent a letter addressed to *Francois and Marie-Therese Ngoubene* requesting a meeting to discuss Plaintiff's just compensation." (Emphasis added). Plaintiff further states in paragraph 60 that "in October 2010, *Marie-Therese Ngoubene* made daily telephone calls to Plaintiffs mother in Cameroon

threatening to harm Plaintiff and/or her family if Plaintiff proceeded with her intent to sue. In addition to threats of physical harm, *Marie-Therese Ngoubene* threatened that the Cameroonian Embassy's police were looking for Plaintiff and her family in order to detain them and deport them." (Emphasis added).

Again even assuming *arguendo* that these statements are true, Ms. Elat never says what these statements have to do with the Defendants. Just as with the previous paragraphs, there are no allegations that Caroline, Dany, and Roxane knew of, approved, requested, aided, or encouraged the conduct alleged, or that Ms. Ngoubene was acting on behalf of her adult children.

**Paragraph 62**

Here, Plaintiff "upon information and belief" simply guesses as to the attorney-client communications between Defendants and their previous attorney. Specifically, she says that "[a]round this time, the Ngoubene Family's lawyer also drafted a letter dated November 10, 2010, that purported to address Plaintiffs claims. He never sent the letter, however, because, on information and belief, his clients informed him that it would not be necessary. They believed their violence and threats of violence had been successful in preventing Ms. Elat from advancing her claims." No other allegations are made as to Defendants' conduct.

**Paragraph 63-66**

Paragraph 63 states that "The Ngoubene Family learned that Ms. Elat was still considering her claims in March 2011. Therefore, on or about March 20, 2011, in the afternoon, *Lucien Epah* (Defendants' uncle and Plaintiffs relative) came to Plaintiffs home purportedly to give her money from her mother. Instead, Epah proceeded to scream at Plaintiff and physically threaten Plaintiff if she proceeded with her intent to sue the Ngoubene Family, indicating that she would 'be in a bad place' if she did so. Like *Marie-Therese Ngoubene*, he threatened that

*Francois Ngoubene* could send the Cameroonian Embassy's police to come get Plaintiff and her family.” (Emphasis added).

Once again, Ms. Elat is tying in the conduct of third parties to the Defendants solely by a familial connection. Just as with the previous paragraphs, nothing ties Defendants to the alleged unlawful conduct. Ms. Elat does not say that Defendants knew of, approved, consented, requested, paid for, aided, or encouraged their uncle’s conduct.

In paragraph 64, Ms. Elat stated that because Mr. Ewounkem had allegedly attacked her previously she reasonably believed that the Ngoubene family would act on the threats of Mr. Epah. As stated previously, Mr. Ewounkem’s actions are not linked to the Defendants. Moreover, Plaintiff admits in the paragraph before that it was Marie Therese who threatened her and that Francois Ngoubene - not the entire Ngoubene family - “could send the Cameroonian Embassy’s police to come get Plaintiff.” Only Francois is stated to have any authority or ability to carry out any purported threat. Plaintiff never states that Caroline, Dany, or Roxane had the authority or approval to send the Cameroonian Embassy’s police after anyone. Hence, it was not reasonable for Plaintiff to believe that the Defendants would or could act on the threat of their father.

Throughout the entire Second Amended Complaint, Plaintiff constantly makes general and vague statements as to actions the Ngoubene Family allegedly took against her - statements which, on their own, would never survive the pleading standard. Importantly, any time Plaintiff sets forth any specific allegations, these allegations only pertain to actions allegedly taken by Francois and Marie-Therese. Because these individuals are diplomatically immune and Plaintiff cannot pursue claims against them, she attempts to link their actions to their children by claiming a conspiracy within the family against her.

In fact, when the Second Amended Complaint is carefully reviewed, paragraph 65 is the *only* paragraph that links Defendants to what occurred after Ms. Elat left the Ngoubene home in May 2008. That paragraph essentially states that because the Ngoubene members were all conspiring together before they must still be conspiring together years after she left the home. Plaintiff never states any independent facts supporting a conspiracy of preventing her from filing suit. There are no allegations that Marie Therese or Francois Ngoubene, Mr. Epah, or Mr. Ewounkem said they were making threats on behalf of their children/relatives. There are likewise no allegations that Defendants had independent knowledge of what their relatives were doing or aided in anyway. Similarly there are no allegations that the Ngoubene children themselves were physically or verbally intimidating, nor that the Ngoubene family together planned to prevent Plaintiff from filing this matter.

Instead, Plaintiff says that because the Ngoubene family members allegedly worked together before to make her perform domestic services from 2006-2008, that it was reasonable for her to believe that all the actions Marie-Therese, Francois, and two distant relatives took for the next three years were taken on behalf of the Ngoubene children. Ms. Elat is attempting to use the conspiracy underlying her tort claims to maintain her argument of duress.

An analogous situation arose in *Jastrzebski v. City of New York,* 423 F.Supp. 669, 673 (S.D.N.Y.1976). There plaintiff's allegations were that he was so intimidated by the tortious acts of defendants that, without any further actions on their parts, he was deprived of a free will to institute his suit against them. The court held that the plaintiff must allege facts of duress which go "beyond those which comprise the alleged torts in suit." *Id.* In holding so, the court stated that:

> [Plaintiff's] argument, if accepted, would prove too much, for any plaintiff -- the victim of an assault, or a battery, or a defamation, for instance -- could argue that

> he was subjectively so intimidated or traumatized by the tortious conduct of his adversary that he was unable to bring suit until sometime well beyond the period established by the legislature for the institution of such actions.

*Id.* at 674.

Similarly here, Ms. Elat is relying on the Defendants' conduct which gave rise to the torts in suit, to make her claim for claim of duress. In paragraph 65, she said that "*Because of the conspiracy that existed between all members of the Ngoubene Family to force Plaintiff to perform domestic services for them*, Plaintiff reasonably believed that all of these threats were made on behalf of the Defendants and that a lawsuit against any of the members of the Ngoubene Family would result in repercussions for her family." (Emphasis added).

The absurdity of Plaintiff's claim is especially apparent if one was to consider if she had been intimidated away from filing suit for even a longer period of time. Under the theory of duress that Plaintiff argues, if Francois and Marie Therese continued to make threats that intimated Plaintiff away from filing suit for five more years, she could still have brought a claim against Caroline, Roxane, and Dany because the Ngoubene family all originally conspired to treat her as a domestic servant, even if the Defendants had no further contact with her.

Even if all the statements made about Marie-Therese and Francois are true, it does not toll the statute of limitations for claims made against Dany, Roxane, and Caroline. The Defendants cannot be held responsible for their parents' or uncles' actions absent any allegations that the Defendants wanted or requested that these individuals act on their behalf. Again, the Second Amended Complaint does not even allege that Defendants knew about their relatives' actions. The equitable tolling doctrine is premised on the idea that a party should not be able to benefit from its own wrongful conduct in forcing a plaintiff to delay suit. *See supra*. The wrongful conduct alleged here, however, is not attributable to the Defendants; it is attributable

only to third parties. Plaintiff tries to gloss over this point by using the term “Ngoubene Family” when making broad conclusions, which she then breaks down to specific factual assertions against only Marie Therese or Francois or the uncles. Paragraph 66 is the perfect example to show Plaintiff’s attempt at obfuscation.

Paragraph 66 first states: “Unsurprisingly, the Ngoubene Family's threats have continued since the filing of this lawsuit.” This is the ambiguous allegation that implicates the entire family. This sentence is then followed by the specific factual statements against only the mother – “Recently, Marie-Therese Ngoubene told Plaintiff’s mother that Plaintiff should ‘remember that she has kids.’ Plaintiff’s husband also found his vehicle heavily vandalized, including a smashed window and a hub cab left in the driver seat as if to send a message.” Setting aside the obvious question as to whether something as vague as reminding someone that they have kids can reasonably be considered threatening enough to prevent filing suit, it is evident that Defendants did not make this threat – the threat is solely attributed to their mother. The last allegation is equally vague; there is nothing that links that statement about vandalism to anyone in the Ngoubene family, other than Plaintiff’s conjecture that a hub cab in a driver seat sends a message.

It has been clearly established that to survive the statute of limitations, the complaint must allege independent facts that support an exception of duress, and cannot rely on the same facts that give rise to the actual claims. Plaintiff’s most recent allegations in no way meet this standard, as the only allegations regarding conduct that could even conceivably toll the statute of limitations pertain solely to parties other than Defendants. The one allegation that even mentions the Defendants does not meet this burden either, as the Plaintiff relies solely on the alleged

actions underlying her tort claims, without alleging further independent facts which might plausibly support this argument.

**c. The allegations in the Second Amended Complaint pertaining to equitable tolling are insufficient to toll the statute of limitations on Counts Two through Four, and they should, therefore, be dismissed.**

In order for a plaintiff to successfully plead duress, she must allege that the defendant's conduct was continuing, dire, an imminent threat, and precluded the exercise of free will and judgment. *See Moses v. Phelps Dodge Corp.*, 818 F. Supp. 1287, 1290 (D. Ariz. 1993) ("Thus, as a matter of law, the conduct of [Plaintiff's] co-employees, occurring *during* her employment, did not constitute the sort of continuing, dire and imminent threat which would serve to equitably toll the running of the limitation period after her termination in June, 1989."; *Jastrzebski*, 423 F. Supp. at 674 (person claiming duress must be threatened with "dire circumstances").

That was clearly not the case here. Ms. Elat had left the Ngoubene home in May of 2008. In the three years that she waited to file suit, she cites to only four incidents involving possible confrontations. By her own admission, she had obtained legal counsel, (Sec. Amend. Compl. ¶ 60), and pursued legal remedies for other claims. *See* Exhibit 1. Ms. Elat attempted to mediate the dispute with the Cameroonian Ambassador and had her counsel seek compensation from the Ngoubenes, yet never filed suit. These circumstances preclude the possibility that Plaintiff could not exercise her free will and judgment. Because Plaintiff's allegations do not meet the standard for tolling the statute of limitations for duress, her common law claims should be dismissed.

**d. The allegations in the Second Amended Complaint giving rise to the claim under the Trafficking Statute are insufficient to meet the pleading requirements of 12(b)(6).**

18 USC § 1589(a) states that it is unlawful for a person to knowingly provide or obtain services or labor: (1) by means of force, threats of force, physical restraint, or threats of physical

restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

The statute further makes it unlawful for anyone to benefit from participating in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), either knowingly or in reckless disregard of the fact that such a venture is taking place. 18 USC § 1589(b).

The key requirement of 18 USC 1589 is that defendants knowingly or in reckless disregard act in violation of the statue, and this is the area in which Plaintiff's claim fails. She never states or implies that the Defendants were aware of their parents' trip to Cameroon in January of 2006, when they allegedly first invited Plaintiff to come to the U.S. She does not allege that the Ngoubene children were present at the meeting, knew what was said or done there, what Francois or Marie Therese promised the Plaintiff, or under what circumstances Plaintiff agreed to come to the U.S. The contract does not refer to any member of the Ngoubene family except Francois. (Dkt. No. 1, Exhibit 1). Even assuming *arguendo* that Caroline drafted the contract as alleged in paragraph 20, there is no allegation that she drafted it for any unlawful purpose or that she knew for what purpose Francois would use it. Further, Plaintiff does not allege that Roxane and Dany even knew about the contract's existence.

Plaintiff alleges that she was not allowed to go anywhere without any member of Ngoubene family, but never specifies when this specifically applies to Defendant. She also fails to allege how such a rule was enforced. The remaining allegations largely pertain to Marie

Therese. In fact, Dany is not specifically mentioned or references anywhere in the Second Amended Complaint. Plaintiff's allegations against the Defendants are not at all sufficient to meet the pleading standards required by *Twombly* for Count I of the Second Amended Complaint and it should, therefore, be dismissed.

**IV. Conclusion**

Riddled with substantive deficiencies, the Second Complaint is without legal merit. It seeks to ignore firmly rooted legally precedent, advancing claims that are undoubtedly untimely under the statute of limitations. Plaintiff's claims are not properly before this Court and her Second Amended Complaint must be dismissed with prejudice.

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/ *Hina Z. Hussain*

Timothy F. Maloney, Esq. (Bar No. 03381)
Hina Z. Hussain, Esq. (Bar No. 18323)
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 441-220-2200
(301) 220-1214 (fax)
tmaloney@jgllaw.com
*Attorneys for Defendants,*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5 day of July, 2012, a copy of the foregoing was filed and served upon the following parties and counsel though the CM/ECF System for the United States District Court for the District of Maryland:

Sara E. Kropf, Esq.
Steven M. Ng., Esq.
Baker Botts, L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Jonathan R. Mureen, Esq.
Russel W. Fusco, Esq.
Van Beckwith, Esq.
Baker Botts, L.L.P.
2001 Ross Ave., Suite 600
Dallas, Texas 75201-2980
*Attorneys for Plaintiff*

__/s/ *Hina Z. Hussain* __________
Hina Z. Hussain