UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| CORINE ELAT, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 11-2931-RWT |
| | § | |
| CAROLINE RAÏSSA EMANDOP | § | |
| NGOUBENE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Corine Elat responds to Defendants' motion to dismiss her Second Amended Complaint (the "Complaint"), on the basis of the running of the statutes of limitations and failure to state a claim, as follows:

## INTRODUCTION

From 2006 through 2008, Defendants Caroline Raïssa Emandop Ngoubene, Roxane Marie-Françoise Ngoubene, and Dany Estelle Ngoubene, along with co-conspirators François Ngoubene, Marie-Thérèse Ngoubene, and Collins Ngoubene (collectively the "Ngoubene Family"), knowingly and willfully obtained the forced labor of Plaintiff Corine Elat, requiring her to work long, grueling hours as their domestic servant for no pay. In this action against Defendants, Ms. Elat seeks justice for these wrongs.

Instead of accepting responsibility for their involvement in Ms. Elat's captivity and forced labor, Defendants attempt to shield themselves from liability on flawed legal grounds.

Having failed in their attempt to shroud themselves in their father's diplomatic immunity,[1] Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint based on the running of the statute of limitations and failure to state a claim. That motion should be denied. Defendants' limitations defense is precluded by the doctrine of equitable tolling, which operates to toll the limitations period where (as here) defendants use threats to prevent the plaintiff from filing her complaint, or where a plaintiff is prevented from timely filing a complaint because of extraordinary circumstances outside her control (even in the absence of direct threats from defendants). Further, the factual allegations in Count One of the Complaint satisfy the requirements of 18 U.S.C. § 1589 and provide the Defendants with fair notice of Ms. Elat's claim against them under that statute.

As clearly articulated in her Complaint, and recounted below, Ms. Elat has suffered greatly at the hands of Defendants. She asks that the Court deny Defendants' motion to dismiss so that she may at last seek redress for their wrongful and inhumane conduct toward her.

## BACKGROUND

Ms. Elat's misfortunes began in late 2005, when François Ngoubene invited Ms. Elat to leave Cameroon for the United States to live with him and the other members of his family, which includes all of the Defendants. Compl. ¶ 14. Ms. Elat, who was in high school at the time, was promised that she could attend nursing school in the United States while working an

---

[1] On May 17, 2012, the Court dismissed Ms. Elat's claims against François Ngoubene, Marie-Thérèse Ngoubene, and Collins Ngoubene without prejudice because of the diplomatic immunity extended by the Department of State to the country of Cameroon. (Dkt. No. 43). This was not a vindication of these former defendants, and they shall answer for the wrongs they committed against Ms. Elat once the Department of State ceases to recognize François Ngoubene's diplomatic status. The Court rightly ruled that Cameroon's diplomatic immunity does not shield the Defendants from litigation on the merits of Ms. Elat's claims.

outside job to pay for her education. *Id*. Ms. Elat was excited about this opportunity and met with François Ngoubene in Cameroon to make arrangements. *Id*. ¶¶ 14, 16. During this meeting, François Ngoubene pressured Ms. Elat to quickly sign papers that he said were necessary to obtain Ms. Elat's travel documentation, but he did not allow her to read them and he physically concealed portions of them. *Id*. ¶¶ 15–16. Unbeknownst to Ms. Elat, one of the documents she signed, which, upon information and belief, had been prepared by Defendant Caroline Ngoubene, was an employment contract for domestic services that François Ngoubene used to fraudulently obtain a visa from the United States Department of State. *Id*. ¶¶ 18–20.

Once in the United States, Ms. Elat discovered that she was trapped in a life far different from the one that had been promised to her. Instead of allowing her to attend nursing school and find a job for herself, Defendants and the other members of the Ngoubene family forced her to perform domestic services for them and their guests for upwards of 17 hours a day, seven days a week, for over two years. *Id*. ¶¶ 23–24. For all of this work, none of the Defendants, nor any other member of the Ngoubene family, ever paid Ms. Elat anything. *Id*. ¶¶ 24–27. Defendants and the other members of the Ngoubene Family made Ms. Elat live in inhumane conditions in which they deprived her of medical treatment when sick, and allowed her to eat only scraps that were left over from the meals she prepared for them—and this only after she asked permission to do so. *Id*. ¶¶ 28–29.

In order to control her and maintain the conditions of her involuntary servitude, the Defendants and the other members of the Ngoubene Family worked together to isolate Ms. Elat from the outside world. Compl. ¶ 30. On most occasions, Ms. Elat was only allowed to leave the Ngoubene Family's home when accompanied by some member of the Ngoubene Family,

which often included at least one of the Defendants. *Id*. ¶ 30. When with the Ngoubenes outside their home, Ms. Elat was forbidden from speaking to anyone, a rule enforced by whoever accompanied her, including each Defendant. *Id*. ¶ 31.

Defendants were also actively involved in making Ms. Elat believe that she had no choice but to keep performing forced labor for the Ngoubene Family. Defendant Caroline Ngoubene, who is an attorney purporting to practice immigration law, contributed to Ms. Elat's sense of hopelessness by making her believe that she was illegal and that she could not leave the Ngoubenes' home. Compl. ¶ 36. Caroline Ngoubene's warnings were supported by similar warnings from co-conspirator Marie-Thérèse Ngoubene that Ms. Elat would be arrested if she tried to leave the Ngoubenes. *Id*. ¶¶ 20, 36. In addition, when Ms. Elat first expressed her desire to leave the Ngoubene Family, Roxane Ngoubene went through Ms. Elat's possessions in order to steal Ms. Elat's passport to prevent her from being able to leaving the Ngoubenes. *Id*. ¶ 37. Finally, all of the members of the Ngoubene Family, including each of the Defendants, furthered Ms. Elat's sense of hopelessness by verbally abusing, threatening, and demeaning her. *Id*. ¶ 38.

In May 2008, due to the courage and help of her husband, who came to the United States from Cameroon intent on rescuing his family, Ms. Elat and her young daughter escaped the Ngoubenes' home with only the clothes on their backs. *Id*. ¶¶ 53–55. Before they were able to escape, however, some or all of the Defendants once again went through Ms. Elat's belongings in a final attempt to obtain her passport and thus maintain their control over her. *Id*. ¶ 54.

Since the time of her escape from the Ngoubenes' home, Ms. Elat has made multiple attempts to seek redress for the wrongs she suffered at the hands of the Ngoubenes. *Id*. ¶¶ 57– 63. Instead of compensating Ms. Elat for her years of forced labor, the Defendants, along with

the other members of the Ngoubene Family, have responded to these requests with threats and intimidation. *Id*. ¶¶ 57–65. These threats and intimidation had their intended effect: to prevent Ms. Elat from asserting her rights against the Ngoubene Family.

For example, in June 2008, one month after her escape, Ms. Elat's attorney sent a letter addressed to François Ngoubene seeking compensation for her years of unpaid labor. Compl. ¶ 58. The response from the Ngoubene Family was in keeping with their treatment of Ms. Elat up until that point: intimidation and violence. In September 2008, Defendants' uncle sought out Ms. Elat at her place of work and physically assaulted both her and her husband, resulting in a protective order being issued against him. *Id*. More of the same followed, including threats made by co-conspirator Marie-Thérèse Ngoubene to Ms. Elat and her family, both in the United States and in Cameroon (*Id*. ¶¶ 59–61, 66), physical threats from apparent proxies for the Ngoubene Family (*Id*. ¶ 63), and anonymous vandalism that Ms. Elat believes is attributable to a concerted effort by Defendants and their co-conspirators to prevent her from persevering in her claims against them (*Id*. ¶ 65).

## ARGUMENT AND AUTHORITIES

### I.     Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipses omitted). To satisfy this standard and survive a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations," but instead need only assert sufficient facts "to raise a right to relief above the

speculative level," i.e. enough facts "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. This is because "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Thus, a plaintiff cannot rely on mere "naked assertions devoid of further factual enhancement" or allegations that establish only "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and alteration omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations contained in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citation omitted).

## II. The Doctrine of Equitable Tolling Precludes Defendants' Statute of Limitations Defense

In their motion to dismiss, Defendants argue that Ms. Elat's state-law claims (Ms. Elat's Second through Fourth Claims for Relief, as well as her action for replevin) are barred by the applicable statutes of limitations. As the allegations in the Complaint make clear, however, the limitations period should be equitably tolled because Defendants are estopped from asserting the statute of limitations as a defense because the Defendants' co-conspirators and/or agents

threatened to harm Ms. Elat and her family if she sought to assert her rights, which prevented Ms. Elat from filing her original complaint sooner. These allegations—representative examples of the types of threats made to Ms. Elat and her family—assert the approximate date, time, and location of the alleged threats, as well as who made the threats, the content of the threats, and the basis for Ms. Elat's belief that the Defendants were involved in the threats. These allegations are more than sufficient to satisfy the notice pleading standard established in Federal Rule of Civil Procedure 8(a) and the Court's holdings in *Twombly* and *Iqbal*.

    **A.**    **Ms. Elat has sufficiently pled equitable tolling based on Defendants' threats and abuse after she escaped the Ngoubenes' home.**

As alleged in the Complaint, the Defendants' co-conspirators and/or agents threatened Ms. Elat and her family in order to intimidate Ms. Elat and prevent her from filing suit or otherwise asserting her rights against the Ngoubene Family. These actions equitably estop the Defendants from asserting an affirmative statute of limitations defense under Maryland law.

Maryland courts have consistently recognized and applied the doctrine of equitable estoppel, which is rooted in the fundamental principle that the law will not permit a party to take advantage of his or her wrongs. *Margos v. Maroudas*, 40 A.2d 816, 819 (1945). The case of *Bayshore Industries v. Ziats* is particularly instructive. 192 A.2d 487 (Md. 1963), *overruled in part on other grounds*, *Travelers Indem. Co. v. Nationwide Const. Corp.*, 224 A.2d 285, 293 (Md. 1966). In that case, an employee seeking reimbursement for work-related injuries was told by her employer that the company would not pay for her injuries and that if she filed a claim for workers' compensation, "you will be sorry. You will never work here again and probably no where around here any more." *Id.* at 489. The plaintiff eventually brought a claim, but it was filed six months beyond the statute of limitations. *Id*. at 488. Nevertheless, the Maryland Court

of Appeals held that the threats to the employee amounted to "clearly inequitable conduct" and that the employer was "estopped from profiting by such conduct" by being allowed to assert a statute of limitations defense. *Id.* at 491. The Maryland Court of Appeals has similarly recognized that threats of physical harm can equitably estop a defendant from asserting the affirmative defense of Maryland's general three-year limitations statute. *See Murphy v. Merzbacher*, 697 A.2d 861, 866 (Md. 1997).[2]

In this case, Ms. Elat has alleged that Defendants' co-conspirators and/or agents threatened Ms. Elat and her family with physical harm and deportation if she continued asserting her claims against the Ngoubene Family, and that these threats had the desired result of preventing Ms. Elat from filing her claims sooner. Specifically, Ms. Elat has alleged that:

- On or about September 6, 2008, after Ms. Elat had first sought compensation from the Ngoubenes for her years of unpaid labor, Guy Patrick Ewounkem, the brother of co-conspirator Marie-Thérèse Ngoubene and the uncle of the Defendants, came to the business where Ms. Elat was employed and proceeded to severely beat Ms. Elat and her husband. Compl. ¶ 58.[3]

---

[2] Defendants misstate the holding in *Murphy*, asserting that the Court of Appeals found that even the "atrocious circumstances," Defs.' Memo. at 5 (dkt. no. 49), in that case were insufficient to invoke the doctrine of equitable estoppel. This is a serious misstatement of the court's reasoning. The Court of Appeals only found that equitable estoppel did not apply because none of the threatening actions occurred during the relevant limitations period, which did not begin running until the plaintiffs reached the age of majority. *See Murphy*, 697 A.2d at 869–70. In this case, it is clear that the Defendants' co-conspirators and/or agents made multiple threats to Ms. Elat and her family during the relevant limitations period, including threats made just weeks before the running of the statute of limitations.

[3] Defendants attempt to refute the allegations related to Mr. Ewounkem by citing to Ms. Elat's "Petition for Protection from Domestic Violence" included as part of Defendants' Exhibit 1 (the "Petition"). This document, however, was not mentioned in the Complaint and thus may not be considered for purposes of a motion to dismiss under Rule 12(b)(6) as it was not "integral to and explicitly relied on in the complaint." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). If Defendants wish the Court to consider the Petition, then their "motion must be treated as one for summary judgment under Rule 56" and Ms. Elat must be given a "reasonable opportunity to present all the material that is pertinent to the motion,"

- On or about March 7, 2009, after Ms. Elat had met with the Cameroonian Ambassador to inform him of the Ngoubene Family's conduct and to request his assistance in obtaining compensation for her forced labor, Ms. Elat's mother called her late at night crying uncontrollably. Compl. ¶ 59. Ms. Elat's mother said that co-conspirator Marie-Thérèse Ngoubene was in Cameroon threatening to send people to hurt Ms. Elat and her family or have them deported. *Id*. These threats were so grave that Ms. Elat's mother encouraged Ms. Elat to take her family and leave the state so that the Ngoubene Family could not harm them. *Id*.

- Throughout October 2010, after Ms. Elat's attorneys had sent a letter to co-conspirators François and Marie-Thérèse Ngoubene requesting a meeting to discuss obtaining compensation for Ms. Elat's forced labor and a separate letter to the Cameroonian Ambassador requesting his assistance on the same subject, co-conspirator Marie-Thérèse Ngoubene made daily telephone calls to Ms. Elat's mother threatening harm to Ms. Elat and/or her family if Ms. Elat proceeded with her intent to sue. Compl. ¶¶ 60–61. Marie-Thérèse Ngoubene further threatened that the Cameroonian Embassy's police were looking for Ms. Elat and her family in order to detain and deport them. *Id*. ¶ 61.

- On or about March 20, 2011, just weeks before the running of the statute of limitations, Lucien Epah, the brother of co-conspirator Marie-Thérèse Ngoubene and Defendants' uncle, came to Ms. Elat's home and proceeded to scream at and physically threaten her if she proceeded with her intent to sue the Ngoubene Family. Compl. ¶ 63. He also repeated the threat that François Ngoubene could send the Cameroonian Embassy's police to come get Ms. Elat and her family. *Id*.

These facts establish equitable estoppel and indeed offer more compelling grounds to apply the doctrine than those in *Bayshore Industries*, in which the court properly found that the defendant was precluded from asserting the statute of limitations as a defense. In that case, the defendant merely threatened to undermine the plaintiff's future employment, 192 A.2d at 489,

---

including the opportunity to perform any necessary discovery. *See* Fed. R. Civ. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) ("[T]he term 'reasonable opportunity' requires that all parties be given some indication by the court . . . that it is treating the . . . motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery.") (citations and internal quotation marks omitted). Finally, the Defendants' attempt to use the Petition to question Mr. Ewounkem's motivation for attacking Ms. Elat and her husband is improper at this stage. The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley*, 464 F.3d at 483.

whereas here co-conspirators and/or agents of the Defendants directly threatened to physically harm Ms. Elat and her family or have them deported, more coercive and repugnant threats. Further, in *Bayshore Industries*, the plaintiff filed suit six months beyond the statute of limitations, whereas Defendants assert Ms. Elat's claims were four months too late. Therefore, if the allegations in *Bayshore Industries* were sufficient to equitably estop a defendant from asserting statute of limitations as a defense, then Defendants in this case should be estopped from asserting a similar defense. *See also Ateeq v. Najor*, 19 Cal. Rptr. 2d 320 (Cal. Ct. App. 1993) (finding that threats of deportation were sufficient to invoke the doctrine of equitable estoppel).

Further, Ms. Elat's allegations are plainly sufficient to meet the pleading standards established in *Twombly* and *Iqbal* for Federal Rule of Civil Procedure 8(a). It cannot be seriously contested that Ms. Elat's allegations are mere "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Indeed, although Ms. Elat's Complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, Ms. Elat has provided specific examples of the threats she received from the Defendants' co-conspirators and/or agents, including the time, date, and location of the threats, the co-conspirator and/or agent who made the threat, and the nature of the threat. At this stage of the litigation, nothing further is required of Ms. Elat and thus the Defendants should be equitably estopped from asserting the statute of limitations as a defense. *See, e.g., Jane Doe One v. Garcia*, 5 F. Supp. 2d 767, 771 (D. Ariz. 1998) (denying motion for summary judgment because "[e]vidence of Plaintiff's asserted fears is adequate to raise a genuine issue of material fact," and noting that "[w]hether the Plaintiff's claim of duress tolled the statute of limitations is a question for the jury").

In their motion to dismiss, Defendants concede that equitable estoppel can apply to each of Ms. Elat's state-law claims. *See* Defs.' Memo. at 5. Defendants argue, however, that equitable estoppel does not apply here because (1) the Defendants did not personally make the threats to Ms. Elat, (2) equitable estoppel cannot be based on the wrongs underlying Ms. Elat's claims, and (3) Ms. Elat has not sufficiently alleged duress. All of these arguments fail.

**B.    Plaintiff's complaint raises a reasonable inference that Defendants participated in the threats, though no such participation is required for equitable tolling.**

Against Ms. Elat's request for equitable tolling, Defendants argue, first, that they did not *directly* make the alleged threats to Ms. Elat and her family members, and thus they cannot be held responsible for these threats. They assert that there is no demonstrated connection between themselves and the individuals who threatened Ms. Elat. This argument is baseless. Ms. Elat's Complaint establishes a plausible connection between Defendants and the threats and abuse she received, though equitable tolling would still apply even if the Complaint did not do so.

As the Fourth Circuit has made clear, the law does "not require a plaintiff to prove his case in the complaint." *Robertson v. Sea Pines Real Estate Cos., Inc.*, 679 F.3d 278, --- (4th Cir. 2012). Rather, "[t]he requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset." *Id*. The Supreme Court has further held that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (emphasis added).

A reasonable inference can be drawn from Ms. Elat's complaint that the Defendants participated in the scheme to threaten and harass Ms. Elat and prevent her from filing this

lawsuit. Ms. Elat alleges that Defendants conspired with François and Marie-Thérèse Ngoubene to keep Ms. Elat in a life of forced labor and were actively involved in and benefitted from that conspiracy. *See, e.g.*, Compl. ¶¶ 30–38. Ms. Elat has further alleged that members of this conspiracy or agents of this conspiracy directly threatened Ms. Elat and/or her family with physical harm and deportation. *See id*. ¶¶ 58–63. The reasonable inference that can be drawn from these factual allegations is that the Defendants continued conspiring with François and Marie-Thérèse Ngoubene once they learned of Ms. Elat's intent to bring suit or otherwise assert her rights in order to protect themselves from having to answer for their role in Ms. Elat's years of forced labor.[4]

The reasonableness of this inference is further supported by the fact that many of the threats were made by the Defendants' mother who lived in the same home as the Defendants and thus would reasonably be expected to discuss Ms. Elat's potential suit against the family with the Defendants—who would be exposed to liability in such a suit—and how to prevent such a suit from being filed. *See* Compl. ¶¶ 6–11. In addition, the other threats alleged in the Complaint were made by Defendants' uncles, who did not have direct knowledge of Ms. Elat's claims and must have learned of them from someone. *See id*. ¶¶ 58, 63. It is reasonable to infer from these facts that these individuals learned of Ms. Elat's claims from Defendants or their co-conspirators. Finally, using threats to prevent Ms. Elat from asserting her rights is fully consistent with the actions the Defendants took while Ms. Elat was a captive of the Ngoubene Family to ensure that

---

[4] This common-sense inference from Ms. Elat's factual allegations is consistent with the criminal law of conspiracy. As the Fourth Circuit has consistently noted, once an individual is part of a conspiracy, his membership in the conspiracy is presumed to continue unless he withdraws from the conspiracy by taking affirmative actions inconsistent with the object of the conspiracy. *See*, *e.g.*, *United States v. Cardwell*, 433 F.3d 378, 391 (4th Cir. 2005); *United States v. Bennett*, 984 F.2d 597, 609 (4th Cir. 1993).

Ms. Elat could not leave the Ngoubenes' control. *See id.* ¶¶ 30–38. It is reasonable to infer that these actions were taken not only to keep Ms. Elat in a life of forced labor, but also to prevent her from disclosing that the Ngoubene Family, including the Defendants, were forcing her to act as their unpaid domestic servant. Therefore, Ms. Elat has shown that equitable estoppel should bar Defendants from asserting the statute of limitations as a defense based on their own conduct.

Even if the limitations period is not tolled based on Defendants' own conduct, it is nevertheless tolled by the fact that *others* threatened and abused Ms. Elat. Equitable tolling is appropriate where extraordinary circumstances prevented the plaintiff from timely filing her complaint. *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) ("[Equitable tolling] has been applied in 'two generally distinct kinds of situation. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'") (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). Importantly, equitable tolling does not require that the defendant committed any bad acts, only that a plaintiff has exercised "due diligence in preserving his legal rights," *Irwin v. Dept. of Veterans*, 498 U.S. 89, 96 (1990), but was prevented from timely filing by extraordinary circumstances.

The facts in this case fully support the application of equitably tolling. As alleged in the Complaint, Ms. Elat consistently and diligently sought to preserve her right to compensation for her years of forced labor. She retained lawyers to attempt to work with the Ngoubene Family and the Cameroonian Embassy. *See* Compl. ¶ 58. When these attempts were met with threats, Ms. Elat's attorneys informed the Ngoubenes that Ms. Elat would be forced to bring suit if they

refused to compensate her. *See id*. ¶¶ 60–61. Again Ms. Elat's attempts to amicably settle this dispute were met with threats. *See id*. ¶¶ 61, 63. These threats represent "extraordinary circumstances" that were intended to and did prevent Ms. Elat from timely filing her suit. Equity demands that the statute of limitations be tolled for plaintiffs like Ms. Elat who diligently seek to preserve their rights but are prevented by threats of harm and deportation from asserting their claims. *See Fiocca v. City of Philadelphia*, Civil Action No. 10–1289, 2011 WL 1155880, at *1 (E.D. Pa. Mar. 28, 2011) (denying motion to dismiss where plaintiff had alleged that "he was prevented from filing his administrative complaints in a timely manner because of what he perceived to be threats from his supervisors that if he did not keep any disputes 'in-house' he would lose his job"); *Ross v. Ross*, 715 S.E.2d 359 (S.C. Ct. App. 2011) (reversing trial court's decision to enter judgment against wife for failing to timely file claim where wife had presented evidence that her former husband had threatened her during the running of the statute of limitations, which had prevented her from timely filing her claim).

Further, tolling the statute of limitations in this case would not frustrate the purposes of Maryland's statute of limitations, such as to ensure fairness to defendants by providing them with notice of a claim within a sufficient period of time to permit them to take necessary steps to gather and preserve the evidence needed to defend against the claim. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 753 (Md. 2007) (quoting *Phillip Morris USA, Inc. v. Christensen*, 905 A.2d 340, 357–58 (Md. 2006)); *see also Marshek v. Bd. of Trs. of Fire & Police Emps.' Ret. Sys. of City of Baltimore*, 749 A.2d 774, 780 (Md. 2000) ("[T]he statute of limitations grants repose to potential defendants that would be disadvantaged unfairly by stale claims due to unreasonably long delay."). Defendants in this case live in the same house as François and

Marie-Thérèse Ngoubene and the reasonable inference from the allegations in the Complaint is that the Defendants were fully aware of Ms. Elat's intent to file suit. Indeed, communications with Caroline Ngoubene prior to the institution of this suit confirmed that she was well aware of Ms. Elat's attempts to obtain compensation for her years of forced labor. Where defendants, as here, have clear notice of the plaintiff's claims and her intent to file suit within the statutory period, the fairness concerns animating the statute of limitations defense are not present. *See Haas,* 914 A.2d at 753.[5]

**C.    Defendants' other arguments against tolling are unavailing.**

Defendants next argue that Ms. Elat is improperly seeking to use Defendants' underlying torts as the basis for equitable estoppel. The case cited in Defendants' own brief shows why that contention is false. *See Jastrzebski v. City of New York*, 423 F. Supp. 669, 673 (S.D.N.Y. 1976). In that case, the court did find that the plaintiff had not invoked duress to toll the statute of limitations where the plaintiff did not allege "that any of the defendants ever warned him against filing suit, or that they threatened him in any way," and instead merely relied on the wrongs underlying his claims to support his fear of filing suit. *Id*. But Defendants ignore that the court then stated that the plaintiff "might have a stronger case if the defendants had actually approached him at some point and threatened him with dire consequences if he were to institute his litigation." *Id*. at 674. That is exactly what Ms. Elat has alleged in this case: the Defendants' co-conspirators and/or agents warned Ms. Elat against filing suit or otherwise asserting her rights

---

[5] The application of equitable tolling in this case is fully consistent with the requirements for establishing a judicial tolling exception in Maryland. *See Philip Morris*, 905 A.2d at 347 (establishing two criteria for judicial tolling: "(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and, (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations"). For the reasons stated above, these requirements are satisfied here.

and "threatened [her] with dire consequences if [she] were to institute [this] litigation." Equitable estoppel in this case is not based on events during Ms. Elat's captivity, but rather on the threats to Ms. Elat and her family after she escaped from the Ngoubenes and the reasonable inference that the Defendants were involved in those threats.

Next, Defendants' argument that Ms. Elat did not adequately allege duress overlooks binding in-state precedent.[6] As the *Bayshore Industries* case makes clear, a single threat can be sufficient to invoke equitable estoppel. *Bayshore Indus.*, 192 A.2d at 491. As explained above, Ms. Elat has more than satisfied the requirements for equitable estoppel under *Bayshore Industries*. Further, the fact that Ms. Elat retained counsel and attempted to resolve her claims against the Ngoubene Family has absolutely no bearing on whether she can establish equitable estoppel. *See, e.g.*, *Noguera v. Hasty*, No. 99 CIV. 8786 KMWAJP, 2001 WL 243535, *6 (S.D.N.Y. Mar. 12, 2001) (finding that equitable estoppel applied even though plaintiff had access to a lawyer during the limitations period as "plaintiff had no reason to believe that her attorney could guarantee her safety").

### III.    Count One States A Claim Against the Defendants

#### A.    Defendants Caroline and Roxane Ngoubene have waived any pre-answer attack on the TVPRA claims against them.

In this, their third motion to dismiss, Defendants argue for the first time that Ms. Elat fails to state a claim for relief against Caroline and Roxane Ngoubene under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1589 and 1595. These defendants cannot make this argument now. Ms. Elat's TVPRA claims against Caroline and

---

[6] In support of their argument, Defendants only cite out-of-state precedent. *See* Defs.' Memo. at 13 (citing *Moses v. Phelps Dodge Corp.*, 818 F. Supp. 1287, 1290 (D. Ariz. 1993) and *Jastrzebski*, 423 F. Supp. at 674).

Roxane are not new, and an amended complaint does not create a second chance to present arguments that were available, but not asserted, in prior motions to dismiss. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1388, at 491–92 (3d ed. 2004) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but not asserted in timely fashion prior to the amendment of the pleading."); *see also Rowley v. McMillan*, 502 F.2d 1326, 1222 (4th Cir. 1974) ("An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended.").

**B.      Ms. Elat's Complaint states a claim for relief against each Defendant.**

Ms. Elat's TVPRA claim meets the Rule 12(b)(6) standard as to each Defendant. The TVPRA's Forced Labor provision can be violated by obtaining labor through schemes, threats, or other proscribed means. *See* 18 U.S.C. § 1589. Accepting the facts alleged in the Complaint as true, Defendants have violated this statute.

The Complaint states a claim against each Defendant at least for obtaining labor from a person "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm." 18 U.S.C. § 1589(a)(4). "Serious harm" under the TVPRA is broadly defined to include "any" type of harm, including not just physical harm but also "non-physical" harm such as "psychological, financial, or reputational harm." *Id.* § 1589(c)(2). As the Seventh Circuit has explained, "Section 1589 is not written in terms limited to overt coercion;" it includes "nonphysical forms of coercion" as well. *United States v. Calimlim*, 538 F.3d 706, 714 (7th Cir. 2008) (holding jury had sufficient evidence to support criminal conviction under 18 U.S.C.

§ 1589 when defendants manipulated victim to believe that, if she did not remain in their employ, she could be arrested, imprisoned, and deported, and would not be able to send any more money back to her family). Section 1589 thus applies to "more subtle psychological methods of coercion." *United States v. Bradley*, 390 F.3d 145, 150 (1st Cir. 2004) (affirming criminal conviction). Liability is established if a victim is even "*implicitly* threatened" with nonphysical harm. *Calimlim*, 706 F.3d at 714 (emphasis added). A TVPRA claim is thus sufficient so long as it alleges that "Defendants intentionally manipulated the situation so that [a plaintiff] would feel compelled to remain." *See Nuñag-Tunedo v. East Baton Rouge Parish Sch. Bd.*, 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011) (denying motion to dismiss TVPRA causes of action; citing *Calimlim* and *Bradley*)).

Plaintiff's Complaint shows that each Defendant participated in a plan and scheme to psychologically manipulate, threaten, and isolate Ms. Elat so that she believed she had no other option than to continue her service to the Ngoubene Family. *See* Comp. ¶¶ 36, 38; *see also id.* ¶¶ 25–27 (describing labor that included cooking, cleaning, doing laundry, washing cars, and shopping—all without pay). Each Defendant verbally abused, threatened, and demeaned Ms. Elat. *Id.* ¶ 38. They each forced Plaintiff to perform domestic tasks for them. *Id.* ¶ 24. They each participated in isolating Ms. Elat from the outside world and preventing her from leaving their home alone, and when outside, enforced a rule against Ms. Elat's speaking to others. *Id.* ¶¶ 30–31. Defendants also all agreed to play along with deceptions designed to prevent Ms. Elat from leaving, such as the lie that she would lose economic opportunities if she left. *Id.* ¶ 34. Defendant Caroline Ngoubene drafted the contract that was used to deceive Ms. Elat into forced

labor, and in light of her overall participation and benefit from the family's coercive scheme, it is plausible to infer that she knew how the contract was used. *See id.* ¶ 20.

Defendants each "conspired together . . . to impose a sense of hopelessness and isolation on Plaintiff by making her believe that she could not leave them because she was 'illegal' and did not have the appropriate papers to go anywhere else." Compl. ¶ 36. Defendant Caroline Ngoubene, an attorney, personally delivered such threats to Ms. Elat. *Id.* ¶ 36. Defendant Roxane Ngoubene, upon learning of Ms. Elat's desire to leave, attempted to steal Ms. Elat's passport. *Id.* ¶ 37. These actions, in addition to establishing a coercive scheme under Section 1589(a)(4), prove that the Defendants "threatened use of a law or legal process . . . to exert pressure on another person to take some action or refrain from taking some action," in further violation of the TVPRA. *See* 18 U.S.C. § 1589(a)(2)&(c).

Essentially, Defendants' attack on Ms. Elat's TVPRA claim amounts to an argument that, because some of their co-conspirators (François and Marie-Thérèse Ngoubene) are immune from liability, there can be no claim against the remaining participants. The law does not allow Defendants to hide behind the immunity of their parents in this way. As explained above and in the Complaint, each Defendant knowingly participated and helped in the scheme to compel Ms. Elat to work without pay. It does not matter whether they were present initially when their parents recruited Ms. Elat in Cameroon. *See Calimlim*, 538 F.3d at 708, 713 (affirming conviction of defendants who used housekeeper's services but were not part of her recruitment in the Philippines or the misrepresentations used to bring her to the United States). Moreover, each Defendant can still be liable for the acts of co-conspirators who are themselves immune. *See Farnsworth v. Zerbst*, 98 F.2d 541, 544 (5th Cir. 1938) (holding that the acts of conspirators who

are diplomatically immune can still be imputed to non-immune co-conspirators); *see also Scott v. Greenville Cnty.*, 716 F.2d 1409, 1422 (4th Cir. 1983) (private parties that conspire with immune public officials can still be held liable for the resulting harm of the conspiracy).

The motion to dismiss Ms. Elat's TVPRA claim as to each Defendant should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint should be denied.

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Stephen M. Ng*

Erik T. Koons
U.S. District Court of Md. Bar No. 16396
erik.koons@bakerbotts.com

Sara E. Kropf
U.S. District Court of Md. Bar No. 26818
sara.kropf@bakerbotts.com

Stephen M. Ng (admitted *pro hac vice*)
Virginia State Bar No. 73265
stephen.ng@bakerbotts.com

1299 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone:  (202) 639-7700
Fax:  (202) 585-4075

Van Beckwith (admitted *pro hac vice*)
Texas State Bar No. 02020150
van.beckwith@bakerbotts.com

Jonathan R. Mureen (admitted *pro hac vice*)
Texas State Bar No. 24060313
jon.mureen@bakerbotts.com

Russell W. Fusco(admitted *pro hac vice*)
Texas State Bar No. 24069743
russell.fusco@bakerbotts.com

2001 Ross Avenue, Suite 600
Dallas, Texas 75201-2080
Telephone:  (214) 953-6500
Facsimile:  (214) 855-8200

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2012, I caused a copy of the foregoing to be electronically filed with the United States District Court, District of Maryland, and notice will be served by operation of the Court's electronic filing system on representatives of all parties to this litigation:

> Timothy F. Maloney, Esq.
> Joseph, Greenwald & Laake, P.A.
> 6404 Ivy Lane
> Suite 400
> Greenbelt, MD 20770

Dated: July 23, 2012

/s/ *Stephen M. Ng*
Stephen M. Ng (admitted *pro hac vice*)
Virginia State Bar No. 73265

**Attorney for Plaintiff Corine Elat**