**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| CORINE ELAT, | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Case No.: PWG-11-2931 |
| | * | |
| CAROLINE RAISSA | | |
| EMANDOPNGOUBENE, *et al.*, | * | |
| | | |
| | * | |
| Defendants. | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion addresses Defendants Caroline Ngoubene, Roxane Ngoubene, and Dany Ngoubene's Motion to Compel, ECF No. 82; Plaintiff Corine Elat's Opposition, ECF No. 98; and Defendants' Reply, ECF No. 103.  For the reasons stated herein, Defendants' Motion to Compel is DENIED.  This Order disposes of ECF Nos. 82, 98, and 103.

## I.    BACKGROUND

On October 13, 2011, Plaintiff filed an eighteen-count Complaint against Francois Ngoubene, Marie Therese Ngoubene, Caroline Ngoubene, Roxane Nbougene, Dany Ngoubene, and Collins Ngoubene ("Ngoubene Family") alleging, *inter alia*, violations of the federal Trafficking Victims Protection Reauthorization Act 18 U.S.C. § § 1589, 1595 ("TVPRA"), the federal Fair Labor Standards Act and Maryland state law and common law.  Compl., ECF No. 1.  Subsequently, Defendants filed a Motion to Dismiss, ECF No. 24, asserting diplomatic immunity, which the Court granted as to Defendants François Ngoubene and Marie-Thérèse

Ngoubene, ECF No. 43, permitting Plaintiff the opportunity to file an amended complaint against those defendants not entitled to diplomatic immunity, Caroline, Roxanne, and Dany Ngoubene.

On June 4, 2012, Plaintiff filed an amended complaint, 2nd Am. Compl., ECF No. 44, naming Caroline, Roxanne, and Dany Ngoubene as defendants, and asserting five claims: Violations of the TVPRA, False Imprisonment and conspiracy to commit False Imprisonment, Quantum Meruit, Unjust Enrichment, and Replevin. The TVPRA claim is a federal question claim. The remaining claims are state law claims filed pursuant to this Court's supplemental jurisdiction. In paragraphs 57–67 and 92–93, Plaintiff asserts that Defendants are equitably estopped from raising an affirmative defense of statute of limitations with respect to her state claims, because Defendants allegedly used physical violence and threats of physical violence against Plaintiff and her family to dissuade her from filing suit.

When deposed by Defendants, Plaintiff was questioned about the identity of various lawyers that she consulted with regard to her employment by the Ngoubene family prior to the expiration of the statute of limitations. Plaintiff identified these attorneys but, on advice of counsel, asserted the attorney-client privilege and refused to answer any questions regarding the contents of her communications with counsel regarding possible claims against Defendants.

Defendants have moved to compel the deposition of the three lawyers that Plaintiff consulted. Defs' Mot. to Compel, ECF No. 82. They claim that by interposing the doctrine of equitable estoppel as a defense against Defendants' statute of limitations defense Plaintiff has waived the attorney-client privilege. *See id.* Plaintiff has filed a Response in Opposition, ECF No. 98, and Defendants a Reply, ECF No. 103. Argument was heard on March 14, 2013.

## II.   ANALYSIS

Defendants seek production of Plaintiff's communications with her former attorneys to "ascertain why [Plaintiff] did not file this action within the applicable statutes of limitations despite the fact that she was represented by several attorneys during the limitations period." Def.'s Mot. 1.  Because Fed. R. Civ. P. 26(b)(1) exempts privileged information from the scope of permissible discovery, Defendants may prevail only by showing that the information they seek is not privileged, or, if privileged, that there has been a waiver.  Defendants have elected the later approach.

A.  <u>Choice of Law</u>

As an initial matter, this Court first must decide whether state or federal privilege law governs.  The starting point for asserting a privilege is Fed. R. Evid. 501.  Rule 501 provides that, for claims and defenses for which federal law applies, federal common law governs privilege, unless the Constitution, federal statutory law, or the Federal Rules provide otherwise. Fed. R. Evid. 501.  Conversely, when State law "supplies the rule of decision" for an element of a claim or defense, the privilege "shall be determined in accordance with State law."  *Id.*  Of course, in instances where both the federal and state privilege law is the same, there is no practical difficulty.  The challenge arises when, as here, both federal and state substantive laws apply and federal and state privilege laws differ.[1]  *See Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 767 n.3 (D. Md. 2008).   Under these circumstances, "Rule 501 would seem to require that federal privilege law control the federal claims, and state privilege law control the supplemental state law claims."  *Id.*  Yet, "the majority of courts have held that federal privilege trumps state law," and applies to all claims, "because were it otherwise, the jury would be faced with a hopelessly confusing task."  *Id.* (collecting cases).

---

[1] This is because the case includes claims under both federal question jurisdiction, as well as state law claims pursuant to this Court's supplemental jurisdiction.

Here, the Complaint alleges a federal claim based on the TVRPA and supplemental Maryland state claims.  Yet, the evidence sought from Plaintiff is relevant *only* to the state law claims because Defendants do not contend that the federal claim was untimely.  Such a dispute does not appear to implicate conflicting state and federal privilege law, raising the question whether the general rule, that applies federal privilege law when both federal and state claims have been pleaded, controls.  Courts confronting issues of privilege, in the context of the discoverability of evidence, do not assess the applicability of Rule 501 on a piecemeal, claim-by-claim basis.  Instead, they apply the law of privilege consistently throughout an entire proceeding.  Indeed, the Seventh Circuit has recognized that "courts have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim." *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) (collecting cases).  Further, this approach appears consistent with the legislative history of Rule 501.  In its report on Rule 501, the Senate Judiciary Committee stated: "It is … intended that the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal Question *case*."  S. Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7059 n. 16 (emphasis added).  Use of the word "case," makes clear that the Committee intended for privilege issues to be resolved consistently throughout the course of a single proceeding, regardless of whether a given evidentiary dispute relates to a federal claim or a state claim.[2]  This approach has found approval in the Fourth Circuit.  *See Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 (4th Cir. 2001) ("We agree with our sister circuits that in a *case*

---

[2]  Moreover, while Defendants' Motion to Compel relates only to evidence relevant to the state law claims, it is foreseeable that additional privilege issues could arise that implicate the federal claim.  It would be inconsistent for the Court to resolve the present dispute under state law, only to apply federal law at a later time.  This result would conflict with "the general policies of the federal rules favoring uniformity and simplicity." *Tucker v. United States,* 143 F.Supp.2d 619, 622–25 (S.D.W.Va.2001).

involving both federal and state law claims, the federal law of privilege applies.") (emphasis added)).   Therefore, I conclude that the federal law of privilege controls in this civil proceeding where the Court's jurisdiction is premised upon a federal question, even if the evidence is relevant to only a supplemental state law claim which may be controlled by contrary state privilege law.   *See Hancock*, 967 F.2d at 467.   Accordingly, the federal law of privilege shall apply for the resolution of the present discovery dispute.

 B.  The Attorney-Client Privilege

Defendants seek production of Plaintiff's communications with her former counsel, Elizabeth Keyes, Edward Leavy, and Cecile Nantchouang because Plaintiff has waived privilege protection by asserting that equitable estoppel bars application of Defendants' statute of limitations defense as to the state claims.   *See* Defs.' Mot. 7–12.   Plaintiff argues these communications are protected by the attorney client privilege, that there has been no waiver, and thus are shielded from discovery.   *See* Pl. Resp. 4–9.

The purpose of the attorney-client privilege is "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'"   *Swindler & Berlin*, 524 U.S. at 403 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).   The Fourth Circuit adopted the "classic test for application of the attorney-client privilege" as set forth in *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-59 (D. Mass. 1950):

> The [attorney-client] privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact to which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in

> some legal proceeding, and not (d) for the purpose of committing a crime or tort;
> and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam) (quoting *United Shoe*);

*see United States v. Lentz*, 524 F.3d 501, 523 (4th Cir. 2008) (quoting *Jones*).  Put another way,

> [F]our elements are required to establish the existence of the attorney-client
> privilege:
>> (1) A communication;
>> (2) made between privileged persons;
>> (3) in confidence;
>> (4) for the purpose of seeking, obtaining, or providing legal
>> assistance to the client.
> Besides the existence of these elements, the privilege must be affirmatively raised
> and cannot have been waived.

Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 65 (5th ed.

2007) (quoting *Restatement, The Law Governing Lawyers* § 118 (Tentative Draft No. 1, 1988));

*see United States v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003); *Burlington Indus. v. Exxon

Corp.*, 65 F.R.D. 26, 37 (D. Md. 1974).   In applying these elements, courts have narrowly

construed the attorney-client privilege.   *NLRB v. Harvey*, 349 F.2d 900, 907 (4th Cir. 1965)

("'The privilege remains an exception to the general duty to disclose. . . . It is worth preserving

for the sake of a general policy, but it is nonetheless an obstacle to the investigation for truth.  It

ought to be strictly confined within the narrowest possible limits consistent with the logic of its

principles.'") (quoting 8 J. Wigmore, *Evidence* § 2291, at 554 (McNaughton rev. ed. 1961)).

Here, it is not disputed that the evidence sought from Plaintiff falls within the scope of

the attorney-client privilege.  Instead, Defendants argue that Plaintiff waived the privilege by

"plac[ing] her communications with her prior counsel at issue in this litigation for her own

benefit."  Defs.' Mot. 12.  They contend that "it would be inequitable to permit her to use the

attorney-client privilege as a sword and as a shield to prevent inquiry into the asserted claim."

*Id.*   Specifically, Defendants take issue with the fact that, during her deposition, "Plaintiff asserted the attorney client privilege by not answering questions concerning any communication with counsel concerning why she failed to file a complaint within the statute of limitations."  *Id.* When asked about her consultation with former counsel, Plaintiff testified as follows:

> Q: Six months earlier, this says, reading paragraph 68, that "On or about June 3rd, 2008, plaintiff's attorney sent a letter to François Ngoubene requesting a conversation about compensating plaintiff for her years of unpaid labor. Defendants did not respond in writing to this letter, but they did respond with physical violence," [. . .]  Who did you go see, which attorney sent a letter on your behalf to François Ngoubene?
> A: I believe Leavy did the first time.
> Q: Edward Leavy?
> A: Yes.
> Q: Well, did you go see Mr. Leavy for the purposes of filing a lawsuit against the Ngoubenes?
> A: Yes.
> Q: And did Mr. Leavy file the lawsuit against the Ngoubenes?
> A: No.
> Q: Did you discharge Mr. Leavy as your lawyer?
> A: I didn't do it. He told me that – I'm not supposed to say?
> Q: Did you fire Mr. Leavy as your lawyer?
> A: No.
> Q: How did he stop being your lawyer?
> A: He just told me he
> MR. FUCSO: Hold, on. Don't talk about conversations you had with counsel.
> Q: Were you upset with the job that Mr. Leavy did or did not do for you?
> A: No. I didn't understand what exactly he was doing.  He wrote a letter, and that was it.
> [. . .]
> Q: Did you go to Mr. Leavy because you wanted to get a lawsuit filed against the Ngoubenes for the forced labor?
> A: It was for my unpaid wages.
> Q: Okay.  And for your conditions generally?
> A: Yes.
> Q: And do you know why it was never filed back then?
> A: No.

Defs.' Mot. 2–3 (quoting Elat Dep., Defs.'s Mot, Ex. 1.).  Therefore, the question is whether Plaintiff, by asserting equitable estoppel, has waived the attorney-client privilege as to these communications.

C. <u>Waiver</u>

As a general rule, a client may waive the attorney-client privilege either expressly or by implication. *E.g.*, *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir.), *cert. denied*, 459 U.S. 1017 (1982). Express, or actual, waiver occurs where confidential communications are disclosed to a party outside the attorney-client relationship, while implied waiver occurs where a litigant puts the substance of a confidential communication at issue in the litigation or by selective disclosure, where a litigant discloses a portion of the confidential communication and invokes the privilege to shield the remainder. *Balt. Scrap Corp. v. David J. Joseph Co.,* No. L-96-827, 1996 WL 720785 (D. Md. Nov. 20, 1996). "While express waivers of the privilege are easy to identify, courts widely dispute at what point a client impliedly waives the privilege by injecting privileged communications into a case." *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 703 (S.D. 2011). Indeed, this Court has recognized that "the problem in determining whether there has been an implied waiver of the attorney-client privilege is that it is commonly difficult to ascertain when a party has placed an otherwise protected attorney-client communication 'at issue.'" *Balt. Scrap Corp.*, 1996 WL 720785, at *25.

As a result, two general approaches have emerged to determine whether a client has impliedly waived the attorney-client privilege. The first approach, and the one that Defendants urge the Court to adopt, first was articulated in *Hearn v. Rhay,* 68 F.R.D. 574 (E.D. Wash. 1975). Balancing the need for discovery with the importance of maintaining the privilege, the *Hearn* court set forth three criteria to determine whether a party has impliedly waived the privilege:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn*, 69 F.R.D. at 581.   The court concluded "where these three conditions exist, a court should find that the party asserting [the] privilege has impliedly waived it through his own affirmative conduct."  *Id.*

While the *Hearn* rule often is cited as the "leading light of implied waiver jurisprudence," many sources criticize it on the grounds that it is vague and does not afford sufficient protection to the attorney-client privilege.  *See* Kenneth Duvall, *Rules, Standards, and the Attorney-Client Privilege: When the Privilege Is "At-Issue" in the Discovery Rule Context*, 32 N. Ill. U. L. Rev. 1, 10 (2011).  In *Rhone*, the court explained that, under the *Hearn* standard, "[s]ome decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation," allowing "the opposing party discovery of confidential attorney client communications in order to test the client's contentions" solely on the grounds that "the information sought is relevant and should in fairness be disclosed."  *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).   Finding such decisions of "dubious validity," the court clarified: "Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."   Consequently, the *Rhone* court articulated an alternative approach to assessing implied waiver, holding that a party only places the attorney's advice "at issue" when "the client asserts a claim or defense, and *attempts to prove that claim or defense by disclosing or describing an attorney-client communication*."   *Id.* at 863 (emphasis added).   The court explained:

> Finding a waiver of the attorney client privilege when the client puts the attorney's advice in issue is consistent with the essential elements of the privilege. That is, in leaving to the client the decision whether or not to waive the privilege by putting the attorney's advice in issue, we provide certainty that the client's

confidential communications will not be disclosed unless the client takes an affirmative step to waive the privilege, and we provide predictability for the client concerning the circumstances by which the client will waive that privilege. This certainty and predictability as to the circumstances of a waiver encourage clients to consult with counsel free from the apprehension that the communications will be disclosed without their consent.

*Id.* at 864.  Moreover,

"[a] party does not lose the privilege to protect attorney-client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality."

*Id.*  The Fourth Circuit has yet to expressly adopt either test; however, a recent decision provides guidance.  In *Shaheen v. WellPoint Cos., Inc.*, the plaintiff argued that disclosure was warranted under the "at-issue" doctrine because:

(1) The privilege was asserted as a result of some affirmative act by WellPoint; (2) through the affirmative act, WellPoint put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny Shaheen access to vital information.

490 Fed. Appx. 552, 557 (4th Cir. 2012) (unpublished).  Rejecting the plaintiff's argument, the court explained "WellPoint never asserted advice of counsel as an affirmative defense" or "indicated that [it] relied on advice of counsel. . . [t]hus, the "at issue" doctrine does not apply." *Id.* (citing *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir.1994) ("Advice is not in issue merely because it is relevant.... The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."); *Billings,* 635 F.Supp.2d at 446 ("[Defendant] does not assert the defense of advice of counsel in this case; thus, the narrow 'at-issue' exception does not apply."); *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wa.1975) (noting that cases finding a waiver of attorney-client privilege share a "common denominator" in that

"the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit")) . Moreover, an earlier opinion from this Court adopted a similar approach. In *Balt. Scrap Corp. v. David J. Joseph Co.*, Judge Gauvey explained:

> In determining whether a party has impliedly waived the attorney-client privilege, I am persuaded that the principal inquiry should focus upon whether or not the proponent of the privilege is relying upon the privileged communication to prove his or her case. Because there is no evidence in the present case that [Plaintiff] is relying upon communications with its counsel in the zoning matter as a sword. . . I will not find that it has impliedly waived its privileged communications with counsel in the zoning litigation.

1996 WL 720785, at *26.

These opinions make clear that the central inquiry in determining whether a party has impliedly waived the attorney-client privilege is whether that party affirmatively attempts to "rely" on advice of counsel. To this end, I am persuaded that the *Rhone* rule is the better reasoned test.[3]   It makes clear when there is an implied waiver because it unambiguously

---

[3] It should be noted that, although some Maryland courts have followed the *Hearn* standard when analyzing whether a client has impliedly waived the attorney-client privilege, a careful review of the facts of those cases reveals that Maryland courts have not found implied waiver simply because a client's state of mind may be at issue in the litigation. Instead, they found implied waiver where the client either: 1) purported to rely on advice of counsel, raising it as an affirmative defense; or 2) attempted to cherry-pick attorney-client communications, disclosing advantageous communication while withholding others. Put another way, in each case, the client clearly and affirmatively implicated an attorney-client communication. *See e.g., CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 56 A.3d 170, 207–208 (Md. 2012) (finding waiver where a defendant attempted to use attorney-client communications as both a "sword and a shield," claiming to have relied upon advice of counsel, and subsequently asserting attorney-client privilege as to substance of such advice); *Parler & Wobber v. Miles & Stockbridge*, 756 A.2d 526, 538 (Md. 2000) (holding, in a medical malpractice case, that attorney-client privilege and other professional-client privileges are waived in any proceeding where client challenges its hired professional's activity or advice because "a privileged party cannot fairly be permitted to disclose as much as he pleases and then to withhold the remainder to the detriment of the defendant"); *Reed v. Balt. Life Ins. Co.*, 733 A.2d 1106, 1121 (Md. Spec. App. 1999) (affirming lower court's finding of no waiver where the appellees did not use advice of counsel as an element of a defamation defense); *ST Sys. Corp. v. Md. Nat'l Bank*, 112 Md. App. 20, 35, 684 A.2d 32, 39–40 (1996) (ruling that defendants, as well as plaintiffs, can be held to have waived the attorney-client privilege if they brought up conversations with

identifies the circumstances under which a party places an attorney's advice "at issue," which is occasioned by a party clearly injecting attorney advice into the action.  Such a rule preserves the spirit of the attorney client privilege and promotes predictability.  It also achieves an appropriate level of fairness by preventing a party from asserting advice of counsel only to its benefit, thereby eliminating the risk that a party will attempt to use the advice-of-counsel as both a sword and a shield.

In this case, there is no evidence that Plaintiff has "relied" upon communications with her counsel.  In fact, Plaintiff's attorney-client communications only were raised as a result of questions raised by Defendants' counsel during her deposition.  At Plaintiff's February 8, 2013 deposition, Defendants asked Plaintiff about her consultation with former counsel, specifically inquiring as to the reason for Plaintiff's termination of the representation.  Only in response to this narrow line of inquiry was the attorney-client privilege raised as a basis for Plaintiff's refusal to answer certain questions.    Plaintiff neither affirmatively injected attorney-client communications, nor sought to rely on advice of counsel.  Further, she has not pleaded advice of counsel as an affirmative defense, or made it an element of her claim in this case.  *See Rhone–Poulenc Rorer Inc.,* 32 F.3d at 863.  Nor has she taken affirmative steps to place the privileged communication into issue for her own benefit.  *See Balt. Scrap Corp.,* 1996 WL 720785, at *24. In fact, a fair reading of Plaintiff's Complaint reveals that she blames her apparent failure to file her state law claims within the applicable period of limitations on fear that she and her family would be physically harmed if she filed suit.  2nd Am. Comp. ¶¶ 57–67, 92–93.  Thus, it was Defendants' alleged violent acts and threats of violent acts that Plaintiff claims intimidated her

---

counsel for their own benefit).  Thus, while this Court ultimately decides this issue under the *Rhone* rule, it is not inconsistent with the actual findings of Maryland courts addressing this issue.

into foregoing the filing of her lawsuit.  Under this theory, even if she had actual knowledge that the statute of limitations had passed, that would not preclude her from attempting to prove that Defendants were equitably estopped from raising the statute of limitations because of their violence and threats of violence.  Plaintiff is not claiming that to prove equitable estoppel she needs to introduce evidence of what her lawyers knew or told her.  To the contrary, she seeks to prove equitable estoppel by what she claims the Defendants said and did to her and her family.  This issue will be resolved by the Plaintiff's testimony, that of her witnesses, and testimony by the Defendants and their witnesses.  In the context of this case, Plaintiff simply has not put the substance of any communications with counsel at issue by pleading equitable estoppel.[4]

---

[4]  Courts frequently depict the doctrines of equitable tolling and equitable estoppel as quintessential examples of situations in which a party impliedly waives the attorney-client privilege.  While the doctrines are distinct, they have a common origin and "are based primarily on the view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time."  *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 663 (D. Md. 2011) (citing *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987)).  "To invoke equitable tolling, the plaintiff must therefore show that the defendant attempted to mislead [her]" as to whether there was a factual basis for filing a claim "and that the plaintiff reasonably relied on this misrepresentation in neglecting to file a timely charge."  *English*, 828 F.2d at 1049.  In other words, to successfully invoke equitable tolling, a party must show that it was unaware, and should not have been aware, that it could have brought a lawsuit within the statute of limitations.  In contrast, "[e]quitable estoppel . . . examines the defendant's conduct and the extent to which the plaintiff has been induced to refrain from exercising his rights."  *Id.* at 665.  (internal citations omitted).  A plaintiff must show that its failure to file in a timely fashion was a result of intentional misconduct on the part of the defendant.  *See id.*

Although courts do not always differentiate between these two doctrines, the distinction can be important.  Where a party invokes equitable tolling, the party's knowledge during the relevant statute of limitations period is critical to the issue and whether the party was represented by counsel prior to the statute of limitations is a factor to be considered in determining whether the party reasonably relied upon the alleged misrepresentation of the defendant.  *See United States ex rel. J. Bobby Currin & Sons v. J & W Builders, Inc.*, 17 F. Supp. 2d 462, 466 (M.D.N.C. 1996).  Accordingly, whether a party knew or should have known about its potential suit may hinge upon the advice given by counsel, necessarily implicating privileged communications.  In these situations, the plaintiff is in a superior position to know when she discovered the cause of action and, thus, should not be able to keep her discussions regarding

Therefore, pursuant to the standard articulated in *Rhone*, I find Plaintiff has not impliedly waived the attorney client privilege.

## III.     CONCLUSION

For the reasons stated above, Defendant's Motion to Compel discovery of communications between Plaintiff and her prior counsel is DENIED.

So ordered.

Dated: <u>March 15, 2013</u>                          <u>        /S/        </u>

                                                                   Paul W. Grimm
                                                                   United States District Judge

adv

---

whether she had a cause of action protected.  Kenneth Duvall, *Rules, Standards, and the Attorney-Client Privilege: When the Privilege Is "At-Issue" in the Discovery Rule Context*, 32 N. Ill. U. L. Rev. 1, 17 (2011).  For this reason, courts have been more likely to find implied waiver in equitable tolling cases because such situations raise fairness concerns typically not present in normal litigation settings.   *See id.*  However, the same concerns of fairness are not necessarily present in the equitable estoppel context.  An equitable estoppel inquiry focuses on whether "the defendant engaged in intentional misconduct sufficient to cause the plaintiff to miss the filing deadline, even though the plaintiff knows that it exists."  *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 663 (D. Md. 2011) (citing *Lekas v. United Airlines, Inc.*, 282 F.3d 296, 301 (4th Cir. 2002)) (internal quotations omitted).  Thus, as in this case, a party's knowledge may be entirely irrelevant.  Additionally, whether a plaintiff was represented by counsel during the statute of limitations period may be equally immaterial.  In such a situation, it cannot be said that a client "puts the attorney's advice at issue" or that a client's knowledge is so integral that the defendants cannot effectively establish their defense without access to attorney-client communications.  *See Balt. Scrap Corp.*, No. L–96–827, 1996 WL 720785, at *26. (indicating that, "where a party's *knowledge* may bar a claim under the applicable statute of limitations," fairness concerns may give rise to waiver) (emphasis added).