IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **CORINE ELAT,** | * |
| Plaintiff, | * |
| v. | * |
| | *     Civil Case No.: PWG-11-2931 |
| **CAROLINE NGOUBENE,** *et al.*, | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This Memorandum Opinion addresses Defendants Caroline Ngoubene, Roxane Ngoubene, and Dany Ngoubene's Joint Defense Privilege Brief, ECF No. 116, which the Court construes as a motion to invoke the common interest rule; Plaintiff Corine Elat's Opposition, ECF No. 118; and Defendants' Reply, ECF No. 124; as well as Plaintiff's Motion to Seal ECF No. 118, ECF No. 119. For the reasons stated herein, Defendants' motion to invoke the common interest rule is GRANTED, and Plaintiff's Motion to Seal ECF No. 118 is GRANTED.

**I.     BACKGROUND**

This lawsuit arises from Plaintiff's claim that the Ngoubene family brought her to the United States from Cameroon under false pretenses and compelled her into domestic service without compensation. 2d Am. Compl. ¶ 52, ECF No. 44. The Ngoubene family consists of François and Marie-Thérèse Ngobene and their six children: Arlette, Caroline, Christian, Collins, Dany, and Roxane ("Ngoubene family"). In her Complaint, ECF No. 1, Plaintiff named as defendants all but Arlette and Christian Ngoubene. Subsequently, the original defendants filed a Motion to Dismiss, ECF Nos. 24 & 33, asserting diplomatic immunity, which the Court granted

as to François, Marie-Thérèse, and Collins Ngoubene, ECF No. 43, permitting Plaintiff the opportunity to file an amended complaint against those defendants not entitled to diplomatic immunity, Caroline, Roxane, and Dany Ngoubene. On June 4, 2012, Plaintiff filed an amended complaint, naming Caroline, Roxane, and Dany Ngoubene as defendants,[1] and asserting five claims: Violations of the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §§ 1589 & 1595 ("TVPRA"), false imprisonment, *quantum meruit*, unjust enrichment, and replevin. 2d Am. Compl. ¶¶ 68–93.

When deposing Defendants, Plaintiff questioned them about various communications they had with other Ngoubene family members regarding this case. Pl.'s Opp'n 1. Defendants, on the advice of counsel, asserted the "joint defense privilege" and refused to answer any questions regarding the contents of these communications. *Id.* Plaintiff seeks production of and/or further information about Defendants' communications with other members of their family. *Id.* at 2. She contends that Defendants have failed to demonstrate the existence of the joint defense privilege, arguing that "Defendants' blanket assertion of the joint defense privilege over these communications contravenes the precedents of this Court and the Fourth Circuit, as well as the fundamental norms of fair and liberal discovery." *Id.* at 1. Plaintiff also argues that, even if Defendants properly asserted the privilege, they waived the privilege. *Id.* at 8. Defendants maintain that the privilege applies to communications between all members of the Ngoubene family since November, 2010, when counsel was retained on behalf of the Ngoubene family. Defs.' Br. 3. Defendants argue that all members of their family "share a common legal interest as defendants or potential defendants of Plaintiff's claims." *Id.* at 3.

---

[1] Hereinafter, "Defendants" refers to Caroline, Roxane, and Dany Ngoubene.

## II.    COMMON INTEREST RULE

The joint defense privilege is "an extension of the attorney-client privilege" that "protects communications between parties who share a common interest in litigation." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). Although it originated in the criminal law context, it has been extended to the civil arena, where it is commonly referred to as the "common interest rule." *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990); *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 2010 WL 3945107, at *4 (E.D.N.C. 2010).

> [T]he common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply.

*Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 292 (4th Cir. 2004) (internal citations omitted). Thus, the common interest rule is "an exception to the general rule that no attorney–client privilege attaches when confidential communications are communicated in the presence of or to third parties." Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 274 (5th ed. 2004). It "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277 (4th Cir. 2010) (citing *In re Grand Jury Subpoenas*, 902 F.2d at 248–49).

Pursuant to this rule, if the attorney–client privilege otherwise would protect a communication, and a third party who shared the client's legal interest was privy to the communication, the privilege is not waived. Epstein, *supra*, at 274–75; *see In re Grand Jury Investigations,* 918 F.2d 374, 386 n.20 (3d Cir. 1990) ("The presence of a third-party, such as a

3

consultant does not destroy the attorney-client privilege where the party is the client's agent or possesses a "commonality of interest with the client.") (internal quotation marks omitted). For this exception to apply, it is "essential" that the client's and third party's "legal interests be fully allied." Epstein, *supra*, at 275; *see Neuberger Berman Real Estate Income Fund v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 416 (D. Md. 2005) (stating that sharing an attorney or even similar interests is not enough; "courts engage in a painstaking analysis to determine whether 'the third party . . . shares an identical, and not merely similar, legal interest as the client with respect to the subject matter of the communication between the client and its attorney.'") (citation omitted); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1975) ("A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.").

For the Court to apply this rule, "the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." *Glynn v. EDO Corp.*, No. JFM–07–01660, 2010 WL 3294347, at *7 (D. Md. Aug. 20, 2010); *Mainstreet Collection*, 2010 WL 3945107, at *4 (same). The privilege only can be waived by "consent of all parties who share the privilege." *In re Grand Jury Subpoenas*, 902 F.2d at 248.

Plaintiff argues that Defendants cannot invoke the common interest rule now for three reasons: (1) they provided a privilege log lacking in specificity; (2) even if the log were sufficient, Defendants did not share an identical interest with the family members with whom

they communicated, and their communications were not in furtherance of their defense of this case; and (3) even if they shared a legal interest and communicated about their joint defense, they waived any privilege that they had.  Pl.'s Opp'n 4–8.  It is Plaintiff's position that Defendants do not share a common legal interest with François, Marie-Thérèse and Collins Ngoubene because these former defendants each were excused from liability on grounds of diplomatic immunity.  *Id.* at 7.  Additionally, Plaintiff maintains that Defendants' legal interests are not fully aligned with their siblings, Arlette and Christian, because neither Arlette nor Christian ever has been a party to this suit.  *Id.* at 6.  Further, Plaintiff claims that "Defendants have waived their privilege because they selectively disclosed information in their depositions about the substance of some conversations but not others."  *Id.* at 8.  As explained below, these arguments are unpersuasive.

### III.    APPLICATION OF THE COMMON INTEREST RULE

To invoke the common interest rule, Defendants objected on the basis of the "joint defense privilege" during depositions and provided Plaintiff with a privilege log that purportedly identifies seven documents that they are withholding from production pursuant to Fed. R. Civ. P. 26(b)(5).  Pl.'s Opp'n Ex. G, ECF No. 118-1.  For each document, Defendants identify the sender(s); the recipient(s), if any; the date; the type of document ("E-mail," "Draft, Unexecuted Affidavit," or "Facebook chat"); and the privilege asserted (attorney–client privilege, joint defense privilege, or work product protection).  *Id.*  Plaintiff contends that, despite the requirements of Fed. R. Civ. P. 26(b)(5) and Discovery Guidelines 7 and 10.d of this Court that claims of privilege must be particularized, Defendants did not include the necessary details in the log to particularize their claims.  Pl.'s Opp'n 1 & n.3.  Additionally, Plaintiff alleges that Defendants are withholding communications, both written and oral, that are not listed in the

5

privilege log. *Id.* Given both the necessity of resolving the current issue and the recurring problems associated with resolving disputed privilege/protection claims during discovery, it would be helpful to state the procedures that need to be followed in this process.

While the scope of discovery in civil cases broadly encompasses facts relevant to the claims and defenses raised in the pleadings and, on a showing of good cause, may even be extended to facts relevant to the subject matter of the litigation, it does not include privileged information. Fed. R. Civ. P. 26(b)(1). Similarly, work product protected information is beyond the reach of discovery unless the requesting party makes a showing of substantial need for the information and the inability to obtain its substantial equivalent without undue hardship. Fed. R. Civ. P. 26(b)(3). A party may assert a privilege during a deposition and may refuse to produce requested discovery in response to interrogatories or document requests if the information sought is privileged or work product protected. Fed. R. Civ. P. 26(b)(5)(A). A party claiming privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed-and do so in a manner that without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). This requirement was added in the 1993 amendments to the Rules of Civil Procedure, and in the words of the advisory committee:

> The party [asserting privilege/protection] must also provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection. Although the person from whom the discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies. Providing information pertinent to the applicability of the privilege or protection should reduce the need for in camera examination of the documents.

Fed. R. Civ. P. 26 advisory committee's note.

Neither the rule nor the advisory committee comment specifies exactly how the party asserting privilege/protection must particularize its claim. In this district, a party asserting privilege during a deposition "should identify . . . the nature of the privilege . . . that is being claimed," and "the person seeking disclosure should have reasonable latitude during the deposition to question the witness to establish other relevant information concerning the assertion of privilege," such as the privilege's applicability, any prior disclosures without waiver, and any circumstances that could constitute an exception to or waiver of the privilege. Discovery Guideline 7.c. A party asserting privilege during written discovery should provide a privilege log that identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. *See, e.g.*, Discovery Guideline 10.d.; Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions*, 62–64 (2005) (suggesting contents of effective privilege log).

Thus, in written discovery, ensuring that a privilege or protection is asserted properly in the first instance and maintained thereafter involves a several step process. First, pursuant to Fed. R. Civ. P. 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden through a properly-prepared privilege log. If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because

of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can rule on the merits of the claim or order that the disputed documents be produced for *in camera* inspection.

Having reviewed the deposition transcripts that the parties attached to their filings, *see* Pl.'s Opp'n Exs. A–C, ECF No. 118-1, as well as Defendants' privilege log, this Court is satisfied that Defendants "provide sufficient information to enable [Plaintiff] to evaluate the applicability of the claimed privilege or protection." *See* Fed. R. Civ. P. 26 advisory committee's note. During Dany Ngoubene's deposition, his attorney asserted the "joint defense privilege" and stated that it pertained to communication "between the family members" that occurred on or after June 3, 2008,[2] because the conversations were "in preparation of litigation . . . or with knowledge that legal proceedings are imminent." Dany Ngoubene Dep. 12:19 – 14:21, Pl.'s Opp'n Ex. A. Additionally, Roxane and Caroline Ngoubene refused to answer specific questions about their communications with family members on the basis of the "joint defense privilege." *See* Roxane Ngoubene Dep. 66:2–8, 70:9–14 & 71:11–13, Pl.'s Opp'n Ex. B; Caroline Ngoubene Dep. 372:12 – 373:11, 378:9–13, 384:2–7, 385:4 – 387:15, Pl.'s Opp'n Ex. C. The privilege log provides the date, sender(s), recipient(s), and type of each communication listed. Moreover, it shows that all of the purportedly privileged communications were among members of the Ngoubene family, and Defendants assert the joint defense privilege, or common interest rule, for each communication. It is immaterial that Defendants did not state

---

[2] Counsel later clarified that the Ngoubene family's "common legal interest arose in June 2008 when Plaintiff first sent a demand letter to the Ngoubene family," but "[t]he joint defense privilege took effect in November 2010 when the family retained counsel and remains in effect to this day." Defs.' Br. 3.

the documents' general subject matter because, as discoverable material in this case is necessarily "relevant to a[] party's claim or defense," these communications also must be "relevant to a[] party's claim or defense," i.e., communications that would be covered by the common interest rule, if it applies. *See* Fed. R. Civ. P. 26(b)(1). It is true that Defendants did not list all of their oral communications on the privilege log, as Plaintiff requested,[3] on the basis that the interrogatory was "overly broad and seeks a level of specificity that is impossible to achieve. The defendant cannot possibly provide details of every communication subject to the joint defense privilege for an undefined period of time." Def. Dany Ngoubene's Resp. to Pl.'s Third Set of Interrogatories, Interrog No. 4, Pl.'s Opp'n Ex. F. Yet, this objection is meritorious, and the privilege log, when considered as the first step to asserting privilege, along with Defendants' objections in their depositions and Dany Ngoubene's response to Interrogatory No. 4, provided sufficient information for Plaintiff to determine whether she was convinced that the common interest rule applies to the listed communications or whether she wanted to challenge Defendants' assertions. Because Plaintiff challenged the sufficiency of Defendants' assertions, the Court ordered Defendants to produce the documents listed in the privilege log for *in camera* inspection. Having viewed the disputed documents, I am persuaded that "the communication[s] [were] made in the course of and in furtherance of the joint legal effort." *Glynn*, 2010 WL 3294347, at *7.

---

[3] In Interrogatory No. 4, Plaintiff requested:

> For each communication for which you are asserting a joint defense privilege, identify the date, time, location, and the name of each person present or participating. Include any communications with your attorney(s), and member of your immediate family, and/or the attorney(s) of any other member of your immediate family. State whether you believe that any of the attorneys present at the time of the communication was representing you.

As for whether "the communicating parties shared an identical legal interest," *id.*, every member of the Ngoubene family shares a common legal interest as either a target or potential target of Plaintiff's allegations. While François, Marie-Thérèse, and Collins Ngoubene are currently excused from liability, they could be re-exposed to Plaintiff's litigation should their diplomatic immunity be lost.[4] *See Swarna v. Al-Awadi*, 622 F.3d 123, 133–34 (2d Cir. 2010) ("Although diplomats enjoy broad immunity pursuant to the Vienna Convention from civil and criminal process, diplomats lose much of their immunity following the termination of their diplomatic status.") (citing *Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010), and Vienna Convention art. 39(2), which provides: "When the functions of a person enjoying privileges and immunities have come to an end, such privileges and immunities shall normally cease at the moment when he leaves the country, or on expiry of a reasonable period in which to do so, but shall subsist until that time, even in case of armed conflict. However, with respect to acts performed by such a person in the exercise of his functions as a member of the mission, immunity shall continue to subsist."). Additionally, while Plaintiff has not named Arlette or Christian Ngoubene in this lawsuit, in her complaint she refers to "the conspiracy that existed between *all* members of the Ngoubene Family to force Plaintiff to perform domestic services for them." 2d Am. Compl. ¶ 65 (emphasis added). This accusation supports Defendants' apprehension regarding the breadth of Plaintiff's lawsuit. *See* Defs.' Reply 5 ("It was not known then–and it remains uncertain at present–how widely Plaintiff might seek to cast the net of legal liability for her claims against the Ngoubene family."). It is possible that Plaintiff eventually may direct her claims towards Arlette or Christian Ngoubene. Thus, it is reasonable to include

---

[4] Plaintiff's first claim for relief in this case is predicated on the TVPRA. This Act includes a ten-year statute of limitations, 18 U.S.C. § 1595(c), so it is possible for François, Marie-Thérèse, and Collins Ngoubene to become defendants again should they lose diplomatic immunity within that time period.

Arlette and Christian Ngoubene within the scope of Defendants' assertion of the common interest rule.

With regard to waiver, Plaintiff claims that Defendants waived their ability to assert the common interest rule by "communicat[ing] with non-defendant family members about the underlying facts of the case" and "selectively disclos[ing] information in their depositions about the substance of some conversations but not others." Pl.'s Opp'n 8–9. As discussed *supra*, the common interest rule encompasses the entire Ngoubene family, such that any communication among family members would not waive privilege. It is true that the disclosure of some, but not all, of a body of communications results in waiver of attorney–client privilege and work product protection if "the waiver is intentional"; "the disclosed and undisclosed communications or information concern the same subject matter"; and "they ought in fairness to be considered together." Fed. R. Evid. 502(a). This is because a party cannot use a privilege "as both a sword and a shield." *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 46 (D. Md. 1974). Plaintiff contends that Caroline Ngoubene disclosed in her deposition that "she and her family were surprised when they learned that Caroline, Roxane, and Dany Ngoubene would be named parties to the lawsuit," and she "recall[ed] suggesting that the family members should get attorneys." Pl.'s Opp'n 9. Based on that disclosure, Plaintiff argues that Defendants must disclose all other communications amongst them. *Id.* Yet, this disclosure was non-substantive, and therefore it cannot be said to function as a sword. Consequently, there is no subject matter waiver, and Defendants may still raise the shield of the common interest rule.

For the reasons stated herein, the Court finds that the Defendants shared an identical legal interest with the other members of the Ngoubene family, communicated in furtherance of that

interest, and did not waive their privilege.  Thus, Defendants' motion to invoke the common interest rule is GRANTED.

Plaintiff also contends that Defendants "concede that the privilege does not cover communications from June 2008 until November 2010," but "have not provided further information relating to the relevant communications during this time period," for which they initially insisted that the common interest rule applied.  Pl.'s Opp'n 1 n.2.  Defendants offered to answer interrogatories regarding any of the undisclosed communications prior to November, 2010.  Defs.' Reply 1 n.2.  Should Plaintiff wish to learn about the undisclosed communications, Plaintiff should work cooperatively with Defendants to determine the quantity and timeframe of interrogatories that Plaintiff may pose to Defendants and submit this discovery plan to the Court for approval within fourteen days of this Memorandum Opinion.  Upon receipt of Defendants' answers, Plaintiff may request permission from the court to challenge Defendants' assertion of privilege.

### IV. CONCLUSION

In sum, Defendants' motion to invoke the common interest rule is GRANTED, and Plaintiff's Motion to Seal ECF No. 118 is GRANTED.

A separate Order shall issue.

Dated: <u>August 16, 2013</u>                                                            /S/
                                                                                   Paul W. Grimm
                                                                                   United States District Judge